[S. F. No. 133.     Department Two.—June 4, 1896.]

THE PEOPLE EX REL. L. R. ELLERT, MAYOR, ETC., RESPONDENT, *v.* HENRY D. COGSWELL ET AL., DEFENDANTS, CAROLINE COGSWELL, APPELLANT.

| | |
|---|---|
| 113 | 129 |
| f127 | 94 |
| 113 | 129 |
| 136 | 603 |
| 113 | 129 |
| 138 | 553 |
| 113 | 129 |
| 143 | 544 |

CHARITABLE TRUST — COGSWELL POLYTECHNIC COLLEGE — ACT OF 1885 — CONSTITUTIONAL LAW.—The charitable trust created by the deeds of Henry D. Cogswell and his wife Caroline E. Cogswell, for the founding of a polytechnic college, for the spread of technical knowledge, and for gratuitous instruction in the mechanical arts of the boys and girls of the state of California, is in conformity with the act of 1885 to advance learning, the arts and sciences, and to provide for the creation of trusts for the founding, endowment, erection, and maintenance within this state of universities, colleges, schools, seminaries of learning, mechanical institutes, etc., and that act is constitutional, and does not controvert section 9 of article XX of the constitution, forbidding perpetuities except for eleemosynary purposes.

ID.—ACTION BY STATE—ENFORCEMENT OF PUBLIC TRUSTS—DUTY OF ATTORNEY GENERAL.—It is not only the right but also the duty of the attorney general to institute an action in the name of the state to enforce public charities or trusts, or to remedy abuses in their management.

ID.—TRUST NOT VOID FOR UNCERTAINTY—GENERAL DESIGNATION OF BENEFICIARIES.—The Cogswell trust is not void for uncertainty in designat-

CXIII. CAL.—9

ing its beneficiaries as "the boys and girls of California," but the very vagueness and uncertainty as to individuals and numbers is a necessary element in the creation of a valid charitable trust, and it is sufficient for the founder to describe the general nature of the charitable trust, and to leave the details of administration to be settled by trustees under the superintendence of a court of chancery.

Id.—Construction of Constitution—Perpetuities for "Eleemosynary Purposes."—The term "eleemosynary," in the state constitution forbidding perpetuities "except for eleemosynary purposes," is not confined to almsgiving or charity shown exclusively to the poor; but the phrase "eleemosynary purposes" includes in its scope all charitable purposes, including schools as well as asylums, hospitals, and religious institutions; nor can the enforcement of charitable uses be limited to any narrow and stated formula, but must expand with the advancement of civilization, and the increasing needs of men, calling for the establishment of new charitable uses.

Id.—Execution of Trust by Married Woman— Acknowledgment— Action of Notary—Conflicting Evidence.—Where the evidence is conflicting as to whether or not the provisions of section 1186 of the Civil Code were complied with by the notary public who took the acknowledgment of the execution of a trust deed by a married woman, the wife of the trustee, which deed purported on its face to have been executed and acknowledged by her, and which was delivered to the trustees therein named, the findings of the court that she duly made, signed, executed, and delivered the trust deed will not be disturbed upon appeal.

Id. — Burden of Proof — Presumption as to Action of Notary. — The burden of proving want of due execution of. the trust deed which purported to have been executed and properly acknowledged in due form by a married woman, is upon her; and, in the absence of proof that the notary did not ask her whether or not she wished to retract its execution, when examined separately and apart from her husband, it will be presumed that he did so ask her.

Id.—Extinguishment of Trust—Abandonment by Trustees—Improper Lease—Interposition of Equity.—Neither the abandonment of the trust by the trustees, nor an improper lease of the trust property, nor that the trust has become impracticable, operates to extinguish the trust, but where no power of revocation is reserved by the founder, the trust can only be extinguished by the entire fulfillment of its object, or by its object becoming impossible, or unlawful; and any abandonment or violation of the trust on the part of the trustees is merely ground for correction of their abuses, and removal of the offenders by the interposition of a court of equity.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion.

*William T. Baggett,* for Appellants.

Plaintiff is not the real party in interest, and the attorney general has no power to institute such an action. (Code Civ. Proc., sec. 367.) There must be an allegation and proof of a distinct right of the people as a whole in the matter in controversy, as distinguished from the rights of individuals, before an action can be brought by that officer in the name of the people. (*Orford etc. Soc.* v. *West etc. Soc.*, 55 N. H. 463; *People* v. *Albany etc. R. R. Co.*, 57 N. Y. 161.) The trust is void for uncertainty; no authority is given to the trustees to designate the boys and girls entitled to the benefits of donation. (*Hughes* v. *Daly*, 49 Conn. 34; *Needles* v. *Martin*, 33 Md. 609; *Goodell* v. *Union Assn.*, 29 N. J. Eq. 32.) It is void because in contravention of the provision of the constitution against perpetuities. (Const., art. XX, sec. 9; Perry on Trusts, 737.) "Eleemosynary purposes" does not embrace purely "educational purposes." There can be no valid donation in perpetuity under our constitution except for the poor and needy. (*Estate of Hinckley*, 58 Cal. 457; Worcester's Dictionary, Century Dictionary, and Rapalje's Law Dictionary, tit. "Eleemosynary"; Civ. Code, sec. 847; Angell and Ames on Corporations, sec. 39; *Vidal* v. *Girard*, 2 How. 127; 1 Blackstone's Commentaries, 472.) The evidence is insufficient to justify the decision, as it does not show that Mrs. Cogswell duly made, signed, executed, and delivered the trust deed. She should have been made acquainted with the contents of the instrument (Civ. Code, secs. 1093; 1186, 1191; *Wedel* v. *Herman*, 59 Cal. 514; *Langton* v. *Marshall*, 59 Tex. 297; *Pease* v. *Barbiers*, 10 Cal. 436), and asked if she wished to retract the execution. (*Ruleman* v. *Pritchett*, 56 Tex. 485; *Burkett* v. *Scarborough*, 59 Tex. 497; *Landers* v. *Bolton*, 26 Cal. 408; *Chauvin* v. *Wagner*, 18 Mo. 531; *Bateman's Petition*, 11 R. I. 585; *Grove* v. *Zumbro*, 14 Gratt. 501; *Belcher* v. *Weaver*, 46 Tex. 293; 26 Am. Rep. 267; *Leonis* v. *Lazzarovich*, 55 Cal. 52; *Mariner* v. *Saunders*, 5 Gilm. 125.)

The action of the trustees in leasing the college was a clear abandonment of the trust, and the property reverted by operation of law to the donors. (Pomeroy's Equity Jurisprudence, secs. 1032, 1033.) Mrs. Cogswell should not be bound by the trust deed. The attorney superintending the execution of the instrument did not ascertain whether or not she well understood the purport of the transaction, and freely and willingly participated in its execution. (*Garnsey* v. *Mundy*, 24 N. J. Eq. 243; *Huguenin* v. *Baseley*, 14 Ves. 273; Pomeroy's Equity Jurisprudence, 943, 951, 955–57, 963, 968; *Smith* v. *Kay*, 7 H. L. Cas. 750, 779; 2 Eq. Lead. Cas. 1156, 1174, 1176, 1189–91; *Kempson* v. *Ashbee*, L. R. 10 Ch. App. 15; *Naldred* v. *Gilham*, 1 P. Wms. 577; 13 Am. Law Reg., note.)

*Rogers & Paterson*, for Respondents.

If, after the charity is established, and is in process of administration, there is any abuse of the trust or misemployment of the funds, and there are no individuals having the right to go into court and maintain a bill, the attorney general, representing the sovereign power and the general public, may bring the subject before the court by bill or information, and obtain perfect redress for all abuses. (Perry on Trusts, 4th ed., sec. 732, p. 357; Lewin on Trusts, secs. 665, 674; 1 Daniell's Chancery Practice, 9–12, and notes; 2 Kent's Commentaries, 10th ed., 359, note; 4 Kent's Commentaries, 619, note; *Parker* v. *May*, 5 Cush. 341; *Attorney General* v. *Garrison*, 101 Mass. 223; *Attorney General* v. *Wallace*, 7 B. Mon. 611, 612, 619; *Attorney General* v. *Parker*, 126 Mass. 221; *Attorney General* v. *Clergy Soc.*, 8 Rich. Eq. 190; *Attorney General* v. *Meeting House*, 3 Gray, 1; *Matter of Bedford Charity*, 2 Swanst. 520; *Wellbeloved* v. *Jones*, 1 Sim. & St. 40.) That power is a common-law power incident to the office. (See authorities cited, *supra;* *Attorney General* v. *Parker*, *supra; Parker* v. *May*, *supra; Orford etc. Soc.* v. *West etc. Soc.*, 55 N. H. 463; *Attorney General* v. *Dublin*, 38 N. H. 459; *People* v. *Dashaway Assn.*,

84 Cal. 114.) The trust is not void for uncertainty.
The essential feature of a good trust for charitable uses
is the indefiniteness or uncertainty of the beneficiaries.
(See cases, *supra.*) A gift to promote the public good
by the encouragement of learning, science, and the use-
ful arts, without any particular reference to the poor, is
a charity. (*American Academy* v. *Harvard College*, 12
Gray, 582; *Whicker* v. *Hume*, 7 H. L. Cas. 124, 141, 145;
*Russell* v. *Allen*, 107 U. S. 163, 172; *Hinckley's Estate*, 58
Cal. 457; *Goodell* v. *Union Assn.*, 29 N. J. Eq. 32.) The
trust is not in contravention of section 9, article XX, of
the constitution. (1 Blackstone's Commentaries, 471;
*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 633, 640;
*Vidal* v. *Girard*, 2 How. 127, 191.) As to the question
whether Mrs. Cogswell signed the deed with knowledge
of what she was doing, the record shows no substantial
conflict, but, assuming the contrary, the court will not
interfere with the judgment below. The evidence out-
side of hers is abundant to support the finding. The
stipulation at the trial admitting that "the acknowledg-
ments were in due form," admits that the certificate of
acknowledgment contained all that the statute required.
(Code Civ. Proc., secs. 1855, 1919, 1948; *Downing* v. *Le
Du*, 82 Cal. 471, 473; Jones on Mortgages, sec. 538;
*Grant* v. *White*, 57 Cal. 141; *De Arnaz* v. *Escandon*, 59
Cal. 489.) Under the law of this state a trust can be
extinguished only by the entire fulfillment of its object,
or its object becoming impossible or unlawful; but not
by being impracticable. (Civ. Code, sec. 2279.) If
trustees of a charity abuse the trust, misapply the charity
fund, or commit a breach of trust, the property does not
revert to the heirs or legal representatives of the donor
unless there is an express condition of the gift that it
shall do so. (Civ. Code, sec. 2280; Perry on Trusts,
sec. 744; *Brown* v. *Baptist Soc.*, 9 R. I. 177, 186; *Barr* v.
*Weld*, 24 Pa. St. 84; *Stanley* v. *Colt*, 5 Wall. 119; *San-
derson* v. *White*, 18 Pick. 328; 29 Am. Dec. 591; *Attor-
ney General* v. *Dublin, supra; Chapin* v. *School Dist.*, 35
N. H. 445; *Hadley* v. *Hopkins Academy*, 14 Pick. 241;

*Reformed Dutch Church* v. *Mott,* 7 Paige, 77; 32 Am. Dec.
613; *Attorney General* v. *Wax Chandlers',* L. R. 6 H. L.
Cas. 1; *Inglis* v. *Sailors' Snug Harbor,* 3 Pet. 99.)

HENSHAW, J.—Appeals from the judgment and from
the order denying a new trial.

Defendants Henry D. Cogswell and his wife, Caroline
E. Cogswell, upon March 1, 1887, executed to certain
trustees, themselves amongst the number, a deed of trust
to real estate in the city and county of San Francisco.
The trust was created under the provisions of the act of
the legislature entitled, "An act to advance learning, the
arts and sciences, and to promote the public welfare by
providing for the conveyance, holding, and protection of
property, and the creation of trusts for the founding,
endowment, erection, and maintenance within this state
of universities, colleges, schools, seminaries of learning,
mechanical institutes, museums, and galleries of art."
(Stats. 1885, p. 49.)

The nature, object, and purposes of the trust were
declared to be the erection and maintenance of a poly-
technical college for the purpose of giving the boys and
girls of the state of California a practical training in the
mechanical arts and industries, the better to fit them to
engage in the different pursuits of life.

The trustees, including the defendants Cogswell, ac-
cepted the trust upon the day of the execution of the
deed, and thereafter, as a board, managed and conducted
its affairs. The defendants Cogswell attended the meet-
ings of the board and participated in its deliberations
and acts.

The present action was brought by the state upon the
relation of L. R. Ellert, mayor of San Francisco, to
have the trust decreed valid and for relief against cer-
tain acts and abuses of the defendants Cogswell, and
other defendant trustees, which acts it is alleged were
designed to hinder the management of the trust and to
frustrate its purpose and defeat its object.

The nature of these acts need not be specified, as an

amicable stipulation was afterward entered into which eliminated these matters as issues in the case. Under this stipulation the action was dismissed as to one of the alleged recalcitrant trustees, other trustees were appointed to fill existing vacancies in the board, the polytechnic college was to be reopened, and the defendant, H. D. Cogswell, consented to the entry of a judgment against himself decreeing that the deed created a valid and operative public trust. By this stipulation the rights of the wife, Caroline, were protected, and her claims and contentions reserved for adjudication.

In the action, she answered and filed a cross-complaint. By her answer she raised the question of the validity of the trust, and by her cross-complaint she pleaded that her hearing was imperfect, and that she did not know that she had signed the deed, nor did she understand its full meaning and import. It was read to her by the notary, but she failed to hear or comprehend it. There was no one present to advise her as to the meaning of the deed and its effect, or to inform her of her rights. She thought the papers were for the purpose of "establishing a school for those of small means," and believed she was merely signing for the incorporation of the college, and was simply accepting the trust as trustee. She discovered while the paper was being read to her by the notary that it purported to be a deed of some kind, because she heard him read descriptions of land, but she did not know in what way it concerned her, or that she had signed that particular paper. She trusted her husband, who deceived her in the matter. She had never had independent advice and did not know that, under the law, the conveyance, which was of community property, was inoperative unless she joined therein. Had she known, she would not have executed it. She also pleaded that the trust is in contravention of the constitutional inhibition against perpetuities. The answer to this cross-complaint was a denial, and a plea of the statute of limitations.

Defendant Caroline Cogswell also demurred to the complaint, and her demurrer was overruled.

The only ground of demurrer inviting consideration is that the state is not a party in interest, and, therefore, has not capacity to sue. The objection is not sound, and the demurrer was properly overruled. This action is based upon averments of a public trust. It is brought to remedy abuses in the management of this trust. It is not only the right, but the duty of the attorney general to prosecute such an action. The state, as *parens patriæ,* superintends the management of all public charities or trusts, and, in these matters, acts through her attorney general. Generally speaking, such an action will not be entertained at all unless the attorney general is a party to it. Such was the rule at common law, and it has not been changed in this state. Even in those states, such as Massachusetts, where, by special statute, the attorney general is instructed to prosecute such actions, it is declared that the statute does not narrow or diminish in this regard the common-law powers incident to the office. (*Parker* v. *May,* 5 Cush. 336.) The principle and rule are thus succinctly stated in *Attorney General* v. *Compton,* 1 Younge & C. C. 417: Where property affected by a trust for public purposes is in the hands of those who hold it devoted to that trust, it is the privilege of the public that the crown should be entitled to intervene by its offcers for the purpose of asserting, on behalf of the public generally, the public interest and the public right, which, probably, no individual could be found effectually to assert, even if the interest were such as to allow it. (2 Kent's Commentaries, 10th ed., 359; Lewin on Trusts, sec. 665; 1 Daniell's Chancery Practice, sec. 13; Perry on Trusts, sec. 732.)

2. It is next contended that the trust designating for its beneficiaries "the boys and girls of California" is void for uncertainty, because the trustees are not empowered to designate what boys and girls, and, if all applied, the trust would be impossible of execution. It should scarcely be necessary to observe that, when the

class has been designated, this very vagueness and un-
certainty, and indefiniteness as to individuals and num-
bers, is a necessary and essential element to the creation
of a valid charitable trust.   (Perry on Trusts, sec. 710;
*Estate of Hinckley*, 58 Cal. 488.)   It is in discussing such
trusts that the supreme court of the United States says
in *Russell* v. *Allen*, 107 U. S. 163: " They may and in-
deed must be for the benefit of an indefinite number of
persons, for if all the beneficiaries are personally desig-
nated, the trust lacks the essential element of indefinite-
ness which is one characteristic of a legal charity.   If
the founder describes the general nature of the chari-
table trust, he may leave the details of the administra-
tion to be settled by trustees under the superintendence
of a court of chancery."

3. It is claimed that the trust is void as creating a
perpetuity which does not come within the exception of
the constitution which forbids perpetuities " except for
eleemosynary purposes."   Herein it is argued that elee-
mosynary pertains exclusively to almsgiving; that alms
are given to the poor, and that this trust is generally
for " the boys and girls of California," and not specifi-
cally for the poor boys and girls.   From this the claim
is made that the constitution never meant to permit
perpetuities for strictly educational purposes, or the word
" eleemosynary " would never have been used.

It may at once be said that the trust creates, and is
intended to create, a perpetuity.   It may further be said
that the beneficiaries under it are not limited to the
poor.   But is it for these reasons any the less an elee-
mosynary trust?   It is quite true that the word " elee-
mosynary " comes to us from the Greek word meaning
alms, but, while it is always interesting to note the ori-
gin and first meanings of words, this knowledge is fre-
quently more curious than valuable; while to insist that
the original meaning shall govern the word in its mod-
ern use and acceptation is very rarely permissible.   It
is in this way interesting to note that " sycophant" comes
from Greek words meaning fig-informer; but it would

scarcely be contended to-day that a man could not properly be called a sycophant unless he had dealings in figs. In short, words by use are sometimes degraded, sometimes ennobled; sometimes narrowed in meaning, sometimes broadened. Eleemosynary has come in the law to be interchangeable with the word " charitable." A charitable trust or a charity is a donation in trust for promoting the welfare of mankind at large, or of a community, or of some class forming a part of it, indefinite as to numbers and individuals. It may, but it need not, confer a gratuitous benefit upon the poor. It may, but it need not, look to the care of the sick or insane. It may, but it need not, seek to spread religion or piety. Schools and libraries, equally with asylums, hospitals, and religious institutions, are included within its scope. It is impossible to enumerate specifically all purposes for which an eleemosynary trust may be created. The difficulty is inherent in the subject matter itself. With the progress of civilization new needs are developed, new vices spring up, new forms of human activity manifest themselves, any or all of which, for their advancement or suppression, may become the proper objects of an eleemosynary trust. As was said by this court in *People* v. *Dashaway Assn.*, 84 Cal. 114: " The enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character, and wants of communities and nations, change and enlarge the scope of charity, and where new necessities are created new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity."

The objects and purposes of the present trust are purely charitable. The mode of effectuating the charity by the erection and maintenance of a polytechnic college is clearly set forth. The salaries of the professors,

teachers, and instructors are to be paid out of the trust funds. Suitable college buildings are to be provided. Tuition is to be absolutely free so long as the resources of the trust will permit, and when a tuition fee is charged it is only to aid in maintaining the institution. Nothing is reserved for profit or gain. All goes to the spread of technical knowledge, and to the gratuitous instruction in the mechanical arts of the boys and girls of the state. Such a trust is in conformity with the act of 1885, and that act in no way contravenes the provisions of section 9, article XX, of our constitution. (*Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Vidal* v. *Girard,* 2 How. 127; *Russell* v. *Allen, supra; American Academy* v. *Harvard College,* 12 Gray, 582; *Whicker* v. *Hume,* 7 H. L. Cas. 124; *President of the United States of America* v. *Drummond,* 33 Beav. 449.)

4. The next point urged is that the evidence does not support the finding that Mrs. Cogswell duly made, signed, executed, and delivered the trust deed. It was admitted by appellant that Mrs. Cogswell's acknowledgment to the deed was in due form. The consideration is thus limited to the question of fact as to whether or not the provisions of section 1186 of the Civil Code were complied with by the notary before he affixed his certificate. The evidence upon this whole subject is conflicting. That of Mrs. Cogswell is sufficiently well epitomized in the foregoing summarization of her cross-complaint. Upon the other hand, there was ample evidence to warrant the court in holding that she did understand the trust deed, and did freely execute it without the imposition of any fraud or deceitful contrivance. There is, upon this point, the direct evidence of Thomas B. Bishop, who drew the instrument and carefully read it aloud to her in the presence of others, named as trustees, who had assembled in his office for the purpose of accepting the trust. He also informed her that it was necessary for her to be examined apart from her husband by the notary in order that she might make a legal acknowledgment. Nothing indicated

her lack of understanding of the instrument. Dr. Cogswell testified that his wife understood that property was to be donated by them for a school. "It was understood that I was not to include the Ohio street property. I did not tell her that we were going to put the Ohio street property in. That came in rather suddenly on me, and when she objected to it I said 'that is a mistake.' I was afraid she would create a scene." Her objection when the deed was read was only to the including of this piece of property. Charles D. Stone testified that he was present at the reading of the instrument, and heard it read to Mrs. Cogswell. "When Mrs. Cogswell objected to the Ohio street property being put in I said they would have it or have control of it as long as they lived, and it is so specified in the deed. When that part of the deed was read Mrs. Cogswell turned to the doctor and said, 'I did not know you were going to put in the homestead,' or something to that effect. . . . . I have since heard Mrs. Cogswell say that she thought it was a good thing the school was started; that she did not like it in the first place, but after it was going that they had done a good thing—a good work. . . . . I never heard any complaint that she had been deceived until after they talked about the suits to recover the property." Mrs. Arnold was also present. She heard the deed read distinctly and carefully, and heard Mrs. Cogswell's objection to inserting the Ohio street prop- . erty. After the execution Mrs. Cogswell asked the doctor why he had not told her that the deeds were to be signed that day. James G. Kennedy testified that Mrs. Cogswell told him after the college was open that she at first was not in favor of the work, but now she was thoroughly in favor of it, and was glad the deed was made.

Mrs. Cogswell retired with the notary, King, to a room apart from her husband. King testified in answer to interrogatories by the court that he did not know she was deaf; that he read the paper carefully and deliberately and took her acknowledgment when he

" was satisfied that she fully understood the contents of the paper. . . . . I sat down alongside of her and told her that this was a deed and the purport of it, and read it to her, and she assented to the acknowledgment."

Some claim is made by appellant that the execution is void because Mrs. Cogswell was not asked by the notary whether or not she wished to retract it.  The burden of proving want of due execution of an instrument admittedly signed, and bearing a certificate of acknowledgment admittedly in due form, was upon appellant. Upon the claim of appellant in this regard it is sufficient to say that there is no evidence in the case that she was not so asked.  The notary's attention is not directed to the point; he is not questioned concerning it.  The whole argument is based upon an absence of evidence which it was appellant's duty to furnish, and which she failed to furnish, to overcome the presumptions attaching to a deed thus duly signed, and bearing a certificate of acknowledgment in lawful form.

Appellant's attacks upon other findings of the court do not require special consideration.  Some of the findings were immaterial to the controversy by reason of the stipulation of the parties; the only important issues left for determination being those of the legality of the trust and of appellant's execution of the deed. What has been said renders unnecessary any consideration of the question of her estoppel by laches and acquiescence, and the bar of the statute of limitations.

Other findings are against the averments of defendant's answer that the trust had been abandoned by the trustees, that they had made an improper lease of the trust property, and had violated their trust; that the trust had become impracticable, and that therefore the property had reverted, and should in equity be decreed to have reverted, to the founders.

A trust in this state is not extinguished, nor does the property revert, for any of these reasons.  If the trustees abandon or in any way abuse their trust, equity will correct the abuses and remove the offenders.  A

trust is extinguished by the entire fulfillment of its object, by its object becoming impossible, or by its object becoming unlawful. (Civ. Code, sec. 2279.) No one of these contingencies has arisen, and the court was right in finding that the object of the trust had not become impracticable. The founders had reserved no power of revocation (Civ. Code, sec. 2280), and the acts complained of were mere abuses which, in the absence of an express condition to that effect, did not work a reversion, but merely warranted the interposition of equity for their correction. (Perry on Trusts, sec. 744; *Brown* v. *Baptist Soc.*, 9 R. I. 177; *Barr* v. *Weld*, 24 Pa. St. 84; *Stanley* v. *Colt*, 5 Wall. 119; *Attorney General* v. *Dublin*, 38 N. H. 459; *Sanderson* v. *White*, 18 Pick. 328; 29 Am. Dec. 591.)

The judgment and order appealed from are affirmed.

McFarland, J., and Temple, J., concurred.