Marshall, C. J.,
dissenting. I feel compelled to enter an emphatic dissent to the per curiam opinion of the majority of the court in this case. The principal contention in this case relates to paragraph No. 17 of the will of Susan M. Sturges, and, *282 although this paragraph of the will disposes of a very valuable block of real estate centrally located in the city of Mansfield, Ohio, and although by the decision of the majority of this court a most important philanthropy is defeated, the majority of the court have disposed of that entire matter within the space of a few lines, as follows: “The trust imposed upon the residuum of the estate is so vaguely defined, the method of creating the administrative board or agency so uncertain and indefinite, and the method of execution of the charities named so ambiguous, that the court is compelled to hold that dispositive paragraph void for uncertainty.” Thus a matter which affects so very large an amount of property and which might be the means of doing untold good in a large and growing community is disposed of without any reason being assigned and without any statement in relation thereto except that the trust is. vaguely defined.
A careful study of the decisions of the courts of Ohio covering the last twenty-five years discloses that the courts are continually trending toward the substance and away from technicalities. This decision, however, is very far from being in line with that trend. In fact this decision is diametrically opposed to the decision of this court in the case of Palmer v. Oiler, Exrx., ante, 271, which decision was in fact rendered on the same day as the cause at present under consideration. I desire to refer to the opinion in that case, and each and every part thereof, because the two cases are so nearly alike that one opinion might very well have answered for both cases.
*283 Let us see whether this trust is “vaguely defined.”
The trust defined in paragraph 17 of the will is stated in a few words, “the income to be used for religious and philanthropic work in Mansfield, Ohio, especially among children and young people.” It should not be necessary to make comment upon language so plain as this. It is said that Mrs. Sturges wrote this will herself without the aid of counsel. If so, it is certainly a great tribute to her intelligence, because she has expressed the purposes of this trust in much better language than is to be found in the expressed purposes of certain religious and philanthropic corporations organized under Ohio laws. I have taken the trouble to examine the expressed purposes of several Y. M. C. A. and Y. W. C. A. associations in Ohio. The purpose of the Y. M. C. A. at Canton, Ohio, is as follows: “Organizing, developing and conserving Young Men Christian Associations in Townships, Villages, and rural communities, and of promoting the spiritual, intellectual and social and physical welfare of the men and boys of Stark county along the lines marked out by and in accordance with the policy of the State executive committee of the Young Mens Christian Association of the State of Ohio.” The purpose of the Railway Y. M. C. A., at Zanesville, Ohio, is: “Developing the Christian and usefulness of its members and to promote the spiritual,- mental, social and physical welfare of young men.” That of the Y. M. C. A., Ironton, Ohio: “Conducting religious services, performing Christian work and co-operation for the benefit of *284 the membership.” That of the Y. M. C. A., Middle-town, Ohio: “The improvement of the spiritual, mental and physical condition of young men and boys.” And that of the Y. W. C. A., Ironton, Ohio: “Associating women in personal loyalty to Jesus Christ as Savior and Lord; to promote growth in Christian character and service through physical, social, mental, and spiritual training; and to become a social force for the extension of the Kingdom of God; and to do all other things necessary and incident to the realization of these objects, and to do and perform those things usually done by such organizations.”
All of the foregoing declarations of purpose were undoubtedly drawn by attorneys or other professional men and women who gave careful study to the matter, and it seems to me that the language used by Mrs. Sturges is clearer and more concise than many of the ones above quoted. Surely it cannot be claimed that it is impossible to carry out the purpose of carrying on religious and philanthropic work among children and young people in Mansfield, Ohio. The late J. G. Schmidlap of Cincinnati was a noted philanthropist and he gave a half-million dollars “for the relief of suffering.” In the case of People, ex rel. Ellert, v. Cogswell, 113 Cal., 129, the bequest was, “for the boys and girls of California.” The celebrated will of James Smithson provided for “an establishment for the increase and diffusion of knowledge among men.” Other purposes in other wills which have been approved by the courts are as follows: “For education in economic and sanitary science in Great Britain,” *285 “For the education of young persons in the domestic and useful arts/’ “To the poor and the service of God,” “For the furtherance of conservative principles and religious and mental improvement.”
Hundreds of other charitable bequests might be quoted, but it is useless to multiply the number. I will not undertake to repeat the discussion of the Ohio cases on this subject, but will merely refer to the opinion in the case of Palmer v. Oiler, supra. The conclusion reached in that case applies with equal force in this case, to-wit, “charity is one of those objects for which courts of equity have smce the earliest times applied the principles of equity to make good those gifts which at law might be technically illegal or informal. * *' * All such authorities evince a disposition to be liberal in the construction of such gifts and to hold them valid and enforceable if they are possible of execution, and to declare only those invalid and unenforceable which are impossible of execution.”
It is further stated, however, in the majority opinion, that the method of creating the administrative board or agency is uncertain and indefinite and the method of execution of the charities is ambiguous. There are two answers to this proposition. The first answer is that it is difficult to find anything indefinite or uncertain in the method of creating the administrative board, and the second answer is that even if it were impossible to create the administrative board along the lines laid down in paragraph 17 this would not be a fatal defect, because the uhiform holdings of this court are that a trust will never be permitted to fail for the want of a trustee, *286 but that the court will if necessary appoint a trustee of its own choosing to carry out the provisions of a charitable bequest. Let us examine this paragraph to see whether it is indefinite and uncertain. It is provided that a board shall be created composed of two men and two women from the First Congregational Church and the Mayflower Memorial Congregational Church of Mansfield, and one man and one woman from each of the other churches of Mansfield, and from the Salvation Army, and the pastors of all the churches, and that such board shall have the power to elect a smaller board from its membership, composed of five or seven persons, to administer the income from this trust. It is provided that only total abstainers from strong drink and tobacco shall be entitled to membership in either board. It will be seen, therefore, that the churches and the Salvation Army of Mansfield, Ohio, appoint electors and the electors choose the administrative board. If this method of creating the administrative board is uncertain and indefinite, the same can with equal force be said of those provisions of the Constitution of the United States providing for the election of president and vice president. I refer to Section 1, Article II, of the original constitution, and to Article XII, of the amendments. It has with some levity been urged that the small board of five or seven members cannot be composed of men and women equally. It is quite true that five and seven are odd numbers, not equally divisible by two. But surely it will not add to the respect due to courts of justice for the courts to declare that this is an insuperable barrier to the validity of this trust. *287 It might very well be held that the small board should not be less than five, nor more than seven, and that three men and three women should administer the trust. Or, if it is deemed necessary to have either five or seven members, then there might be as nearly an equal division between the sexes as possible. It surely will not be urged that it is impossible to find a man and woman in each church in Mansfield who are total abstainers from strong drink and tobacco. In fact the greatest objection to the majority opinion in this case is that it assigns no reasons for its conclusion that the trust is vaguely defined and that the method of creating the administrative board is uncertain and indefinite.
On the other hand, if it shall be conceded for the purposes of the argument that the manner of creating the board is uncertain and indefinite, it has repeatedly been held by all the courts of the United States and England whose decisions are entitled to any respect that a trust should not be permitted to fall on account of the uncertainty of a trustee, or the uncertainty of the manner of his selection. In. addition to what has been said in the opinion in the case of Palmer v. Oiler, I wish to further say in the matter of the uncertainty of a trustee that the decisions of the Ohio courts and of the supreme court of the United States are in perfect harmony and are diametrically opposed to the conclusions reached in the majority opinion in this case.
In the case of Landis & Vaniman, Exrs. of Urmey, v. Wooden, 1 Ohio St., 160, this principle was discussed at some length by Judge Ranney. *288 Referring to the case of Trustees of McIntire Poor School v. Zanesville Canal & Mfg. Co., 9 Ohio, 203, 287, and Zanesville Canal & Mfg. Co. v. City of Zanesville, 20 Ohio, 483, Judge Ranney points out that in that estate the devise was claimed to be void for uncertainty as to the objects intended to be benefited, but that it was sustained upon the following principle declared in that case, “Where a trust is plainly defined, and a trustee exists capable of holding the property, and executing the trust, it has never been doubted that chancery has jurisdiction over it, by its own inherent authority.”
That case, as above noted, was before this court three times for judicial construction and for the court’s direction, and by reference to the report found in 9 Ohio, 203, 287, it will be found that after the death of Mclntire the general assembly of Ohio enacted an amendment to the charter of The Zanesville Canal & Mfg. Co., trustee, giving that corporation power to administer the trust, such enactment being dated the year 1836.
By reference to the case of Vidal v. Girard’s Exrs., 2 How., 127, it will be found that Girard named the mayor, aldermen and citizens of Philadelphia as trustees to carry out the trust. Thereafter a corporation was organized under Pennsylvania laws incorporating the mayor, aldermen and citizens of Philadelphia into a separate corporation for the particular purpose of carrying out the provisions of the trust.
More than a dozen such instances can be found among the reported cases, all of which will be found *289 referred to in the case of Rockwell v. Blaney, 9 N. P., N. S., 500. In that case, Judge Duncan, sitting in Union county, in a well-considered opinion, holds that a trust will never fail for the want of a trustee.
In the case of Landis & Vaniman, Exrs. of Urmey, v. Wooden, supra, Judge Ranney made the following closing observation in his opinion: “It is suggested that the trustees in this case should be changed. The papers present no reason why this court should interfere with the appointment made by the testator himself. If for any reason hereafter, the" trust shall not be faithfully executed, the court of chancery in the county will possess full power to remedy the defect so as to carry into full effect the intention of the testator: for no trust can fail for the want of a trustee.”
It is urged, however, in the majority opinion, that paragraph No. 18 is also void. And if the majority opinion can be said to assign any reason for its conclusion concerning paragraph No. 18, it is found in the following language: “by attaching thereto a private charity which may conflict with the public charities so to be created in paragraph No. 17.” A careful examination of the two paragraphs will show that there is no conflict. It is true that in No. 18 the testatrix sought to make some provision for needy relatives. This provision, however, was confined to three persons, and it has been stated in argument that they ate old and these charges against the property cannot long continue. These benefactions would make no impression upon the value of *290 the estate, because it is only provided that they should have shelter in one of the houses on the property, and a further sum of $200 per year if they should become objects of charity. It is possible, therefore, that the entire real estate referred to in paragraph 17 might not be available for the purposes of the charitable trust until the death, of such three relatives, but this would merely amount to a postponement of the full administration of the trust during the lifetime of the three relatives. The last sentence in paragraph 18 indicates that the testatrix did not expect that any such assistance to relatives would be necessary. But even if it should have become necessary, it would not militate against the validity of either paragraph 17 or 18. No authorities are cited in the majority opinion for reaching this conclusion, but many authorities might be cited to the contrary. The will of Henry C. Frick gave a life estate to his wife in his homestead, and at her death the house and a.11 his art collections, valued at millions, were left to a corporation to be formed for “A Gallery of Art.” In the case of Howe v. Wilson, Exr., 91 Mo., 45, a bequest was upheld in which the entire estate was given to the wife for life, under the management of a trustee, with power to apply the interest and income, and a portion of the principal, if necessary, for the support of the wife, and at her death to be distributed among Jiaritable institutions. In the Matter of MacDowell, 217 N. Y., 454, a bequest was made to provide for “a home for refined, educated Protestant gentlewomen, whose means are small and whose home is made unhappy by having to live with *291 relatives, who think them in the way.” The will further provided that preference should be given to a sister of the testator as an inmate of such home. •
Many other instances might be cited where provisions of a will similar to paragraph 18 of the will of Mrs. Sturges have been upheld. Even if paragraph 17 is invalid it does not follow that paragraph 18 is invalid, because they are entirely separate paragraphs; and after 17 has been declared to be invalid there is absolutely no reason for declaring 18 to be invalid and it is a particularly cruel thing to do so. After paragraph 17 has been declared invalid the provisions of paragraph 18 are left standing alone, and they amount to only a reasonable provision for needy relatives. Surely there is nothing indefinite or uncertain in the requirement that house accommodations be furnished to relatives, not exceeding three in number, and in addition thereto the sum of $200 annually, if they should become objects of charity.