[Civ. No. 18130.   First Dist., Div. Two.   Feb. 16, 1959.]

Estate of JANET M. PECK, Deceased. AARON M. SARGENT et al., Appellants, v. THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY (a Corporation), Respondent.

Aaron M. Sargent, in pro. per., and Doyle & Clecak for Appellants.

Robert Minge Brown, Albert J. Moorman, Graham B. Moody, Jr., and McCutcheon, Doyle, Brown & Enersen for Respondent.

KAUFMAN, P. J.—The only question on this appeal is the validity of a charitable trust created by the will of Janet Peck. By a decree determining heirship and ordering preliminary distribution, the probate court found the trust valid and ordered distribution accordingly, to the Board of Trustees of The Leland Stanford Junior University, respondent herein. Appellants assert that the trust is void and claim the estate on grounds of intestacy.

Janet Peck died in 1956, leaving an estate valued at over $480,000. Her closest surviving relative was a first cousin, Edmund More, Jr. Appellants are the children of persons who were first cousins of the testatrix. By her will, dated 1936, Janet Peck left her estate in trust to the Trustees of Stanford University, subject only to certain annuities.

Appellants contend that: (1) The trust is not a valid charitable trust as the property must not be used exclusively for educational purposes; (2) The testatrix intended to make a bequest to the trustees individually; (3) The trial court erred in denying appellant's petition for preliminary distribution and determination of heirship. Appellants have also filed a motion requesting findings on appeal, based on substantially the same contentions. There is no merit in the appellants' position.

The relevant language of the will is as follows:

"SECOND: The ever-recurring misunderstandings between the various nations and the peoples of different races which impede human progress and lead to devastating wars, are obviously attributable, in large measure, to differences of environment and language. I believe that these handicaps can be largely overcome, if the men and women whose vocation vests in them the power to mold public opinion, make a conscious effort to that end. However, their effort will go for naught, unless based on sound education on their own part, and thorough understanding of the economics of the various countries of the world, as well as their historic, diplomatic and political backgrounds. The molding of public opinion in the United States, insofar as concerns the attitude of our citizens

toward anything foreign, rests almost entirely with the press which, in turn, must depend upon editorial staffs and foreign correspondents. Based on past experience, I believe that it is fair to say that there is a woeful lack of any real education on their part in what should be the foundation of one of the most important patriotic contributions which they could make to our country and the welfare of its citizens. I have therefore long cherished the hope that I might be able to do something to help toward the correction of these conditions, and to that end I hereby give and bequeath to THE TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY (hereinafter referred to as my 'Trustees') all of my estate and property, both real and personal and wheresoever the same may be situate, *in trust* for the foregoing purposes,—subject to the express terms and conditions hereinafter set forth:

"(a) My said Trustees shall establish a *Foundation of World Relations,* for the aforesaid purposes; and my said Trustees shall use and apply the net income derived from said trust estate for the maintenance of said Foundation. My said Trustees shall, in their own discretion, determine from time to time the manner in which said net income may be best expended for said purposes, in view of the amount available therefor; and they may, if they deem such course wise, postpone the expenditure of any sums for my said trust purposes, until such time as the income available therefor shall, in their opinion, be adequate to meet such expense as may be necessary to accomplish something substantial in the said field of learing [sic] to which said trust is dedicated."

We start with several fundamental principles of the law. ▋ First, that a construction of a will favorable to testacy will be adopted when the language used reasonably admits of such construction, (*Estate of Wellings,* 197 Cal. 189 [240 P. 21] ; *Estate of Dunphy,* 147 Cal. 95 [81 P. 315] ; *Estate of Heywood,* 148 Cal. 184 [82 P. 755] ). ▋ Second, courts look with favor upon all attempted charitable bequests and there is no authority to construe a charitable bequest as legally void if it can possibly be made good. It is the policy of the law to favor gifts for charitable purposes and a will providing such gifts will be liberally construed to accomplish the intent of the donor. (*Estate of Quinn,* 156 Cal.App.2d 684 [320 P.2d 219] ; *Estate of Tarrant,* 38 Cal.2d 42 [237 P.2d 505, 28 A.L.R.2d 419] ; *Estate of Bunn,* 33 Cal.2d 897 [206 P.2d 635] ; *Collier* v. *Lindley,* 203 Cal. 641 [266 P. 526] ; *Estate of Hinckley,* 58 Cal. 457.)

We think any reasonable construction of the language used by the testatrix indicates that the testatrix desired to contribute toward world peace by providing education for newspapermen. Such a purpose is fundamentally educational. It has long been the law in this state, that a trust for educational purposes is a trust for charitable purposes. (*Lundberg* v. *County of Alameda*, 46 Cal.2d 644 [298 P.2d 1]; *Estate of Yule*, 57 Cal.App.2d 652 [135 P.2d 386]; *Estate of Bailey*, 19 Cal.App.2d 135 [65 P.2d 102]; *Estate of Bartlett*, 122 Cal. App. 375 [10 P.2d 126]; *Estate of Purington*, 199 Cal. 661 [250 P. 657]; *Estate of Royer*, 123 Cal. 614 [56 P. 461, 44 L.R.A. 364]; *People* v. *Cogswell*, 113 Cal. 129 [45 P. 270, 35 L.R.A. 269]; *Estate of Hinckley, supra,* 58 Cal. 457.)

Nor can it be doubted in this day and time, that an ultimate purpose to promote peace and world understanding is a valid charitable purpose. Our courts have long recognized that ''The enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character, and wants of communities and nations, change and enlarge the scope of charity, and where new necessities are created new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity.'' (*People* v. *Dashaway Assn.*, 84 Cal. 114, 122 [24 P. 277, 12 L.R.A. 117]; see also *People* v. *Cogswell*, 113 Cal. 129 [45 P. 270, 35 L.R.A. 269].) Bequests to promote peace and world understanding have been upheld in other jurisdictions. (*Tappan* v. *Deblois*, 45 Me. 122; *Mills* v. *Montclair Trust Co.*, 139 N.J.Eq. 56 [49 A.2d 889]; *In re Harmon's Will*, 80 N.Y.S.2d 903.)

Appellants argue that the trust is one solely for propaganda. Even if this were so, a trust with the object of creating a more enlightened public opinion and a bequest to an organization with political purposes have been held to be valid charitable trusts in this state. (*Collier* v. *Lindley*, 203 Cal. 641 [266 P. 526]; *Estate of Murphey*, 7 Cal.2d 712 [62 P.2d 374].)

Appellants further argue that the language of the will permits noncharitable as well as charitable uses. The appellants rely chiefly on *Estate of Sutro*, 155 Cal. 727 [102 P. 920]. As we recently pointed out in *Estate of Rollins*, 163 Cal.App.2d 225, at p. 228 [328 P.2d 1005], the earlier decisions were some-

what quick to find the possibility of a noncharitable use, while the recent cases are less inclined to search minutely for the possibility of a noncharitable use. In the Sutro case as in *Estate of Kline,* 138 Cal.App. 514 [32 P.2d 677]; *Estate of Peabody,* 21 Cal.App.2d 690 [70 P.2d 249], the trustees were authorized to apply the trust fund for the benefit of generally described existing institutions, some of which were charitable and some of which were privately operated for profit. In the instant case, the will restricts the use of trust property solely to charitable purposes. The only institution mentioned in the will is Stanford University which is organized for public benefit and not for private profit. The trustees are to establish a Foundation of World Relations and to use the net income of the trust property for the operation of the Foundation. If the trust income is sufficient, the trustees are to establish a professorship.

Furthermore, under the terms of the founding grant, which is made applicable to all bequests to the Stanford Trustees by section 10 of article IX of the State Constitution, the Stanford Trustees are prohibited from using the income and profits of the trust for any private purposes. Contrary to appellants' argument, the trustees are not given an unlimited and uncontrolled discretion to select noncharitable objects, employ noncharitable means, or use the income for noncharitable purposes. The trustees are given only the discretionary power to determine the particular plan for carrying out the purposes of the trust. This is proper and in accord with the law. As stated in *Estate of Butin,* 81 Cal.App.2d 76 at 81, 82 [183 P.2d 304] : ''. . . it is not necessary that a detailed plan of execution shall be stated. When the general nature of the trust is adequately designated, its execution may be delegated to the named trustees, subject to the approval of court. (*Russell* v. *Allen,* 107 U.S. 163 [2 S.Ct. 327, 27 L.Ed. 397]; 14 C.J.S. 436, § 7.)'' (See also *Estate of Clippinger,* 75 Cal. App.2d 426 [171 P.2d 567].)

Appellants also cite *Davenport* v. *Davenport Foundation,* 36 Cal.2d 67 [222 P.2d 11], in which one of the stated purposes of the trust was the making of annuity payments to named individuals for a period longer than that permitted by the rule against perpetuities. In the instant case, all of the annuitants, except Mrs. Railton, predeceased the testatrix, and the annuity to Mrs. Railton terminates 15 years after the death of the testatrix or at the death of Mrs. Railton, whichever occurs first.

█ Appellants also argue that the will bequeathes the trust to the individuals who happened to be the Trustees of Stanford University at the date of her death and not to the Board of Trustees of Stanford University. The dispositive language of the will is to "the trustees of the Leland Stanford Junior University—(hereinafter referred to as 'my Trustees')." There is no ambiguity or uncertainty in this language. The testatrix intended to make a bequest to the governing body of Stanford University as the trial court found. The court's finding and distribution to the Board of Trustees of Stanford University was in accordance with section 10 of article IX of the state Constitution which is as follows:

". . . The Board of Trustees of the Leland Stanford Junior University, as such, or in the name of the institution, or by other intelligible designation of the trustees or of the institution, may receive property, real or personal, and wherever situated, by gift, grant, devise, or bequest for the benefit of the institution, or of any department thereof, and such property, unless otherwise provided, shall be held by the Trustees of the Leland Stanford Junior University upon the trusts provided for in the grant founding the university, and amendments thereof, and grants, bequests and devises supplementary thereto."

Appellants' final contention on appeal relates to the trial court's alleged failure to grant their petition for preliminary distribution and determination of heirship. This contention need not be answered here in view of our upholding the validity of the trust.

In view of the foregoing, the decree appealed from is hereby affirmed and the appellants' motion for findings on appeal is denied.

Draper, J., concurred.

A petition for a rehearing was denied March 18, 1959, and appellants' petition for a hearing by the Supreme Court was denied April 15, 1959. Spence, J., did not participate therein.