[Civ. No. 6140. First Appellate District, Division Two.—May 2, 1928.]

EARL C. DINGWELL et al., as Executors, etc., Plaintiffs, v. J. H. SEYMOUR et al., Appellants; SECURITY TRUST & SAVINGS BANK (a Corporation), Respondent.

484

Stephens & Stephens for Appellants.

Newlin & Ashburn and Ray E. Nimmo for Respondent.

Lissner, Roth & Gunter as *Amicus Curiae.*

WELCH, J., *pro tem.*—This action was commenced by Millicent H. Olmsted in her lifetime to quiet her title against appellants and a number of other co-defendants who have disclaimed any interest herein. The attorney-general of the state was made a defendant who, although served with summons, did not appear. The complaint is in the usual form of actions to quiet title to real estate. The

complaint simply alleged that plaintiff is the owner and entitled to the property described in the complaint and that the claim of defendants is without any right whatever and that they have no right, title, or interest in either the real or personal property described in the complaint. The properties described in the complaint àre situate in Los Angeles County.

The complaint was filed August 3, 1923. Plaintiff died on October 15, 1923, and Robert M. Clarke, special administrator, was substituted as plaintiff for deceased. There is a statement in the brief of respondent that since the taking of the appeal Earl C. Dingwell and Henry K. Elder have superseded the special administrator as executors.

Appellants, who are trustees named in certain deeds hereinafter described, answered the complaint and deny that plaintiff is the owner and entitled to the possession of said properties. By way of cross-complaint they set forth four deeds in full, which deeds were made and executed to appellants by the original plaintiff in the action. The properties described in the complaint are properties described in some one or more of said deeds, which properties were conveyed to appellants in trust to establish and maintain in or near the city of Los Angeles a hospital for sick, wounded, and poor persons. Appellants made the Security Trust & Savings Bank a party defendant; but later the defendant bank came into the action as a fictitiously designated defendant and filed an answer to the complaint; it also cross-complained against all the parties to the action in which it set up six deeds to the real estate described in the complaint, which deeds were made and executed by the original plaintiff in the action; also it alleged an assignment by said original plaintiff to respondent of all the personal property described in the complaint, and finally it set forth a document denominated "Trust Agreement" in which the respondent bank is named as trustee, in which trust agreement many uses and trusts concerning the property conveyed are named and among them is one to establish and maintain a "Public Charitable Hospital" in Los Angeles County.

The cross-complaints of appellants and of respondent were duly answered by the respective cross-defendants. The special administrator in his answers to the cross-complaints

of appellants, and of respondent alleges that the deeds of conveyance to appellants and to respondent and the trusts therein alleged to be created were and are null and void. He sought to secure all the property for the heirs and devisees of the grantor, Millicent H. Olmsted, deceased.

The result of the trial was a judgment and adjudication that plaintiff has no right, title, or interest in and to the property involved; that the deeds relied upon by appellants are null and void; and that the respondent bank is the owner of all property involved in the action, subject to and upon and with the uses and trust prescribed and contained in the trust agreement above mentioned. The special administrator did not appeal from the judgment against him and therefore the judgment is final as to him.

The appeal is upon the judgment-roll and involves questions of law alone; for there is no evidence in the case except the documents set forth in full in the pleadings. In the subsequent documents to the bank there is not even a suggestion or word to indicate the trustor's reason for making these subsequent deeds and trust instrument, nor is there any reference to the former deeds. There is not an expression anywhere in the record to suggest the grounds of the trial court's judgment holding the prior deeds null and void. No word has escaped the lips of the trustor so far as this court knows from the record of otherwise giving or explaining her act or motive for commencing the suit to quiet her titles against her trustees named in the prior deeds. And counsel for appellants are discreetly circumspect in refraining from assigning any motive or alleged motive for Mrs. Olmsted's later act in bringing the suit and in making the documents to the respondent bank. While counsel for the respondent throughout their briefs persist in asserting that Mrs. Olmsted made the subsequent trust documents because she knew of the defects and weaknesses of her prior deeds and because of her desire to carry out her original hospital trust scheme in a businesslike manner.

We know nothing of the intentions and motives which induced Mrs. Olmsted to make the deeds and trust agreement to respondent except such as may be implied by the acts themselves. We are not permitted to draw the inference insisted upon by respondent. Subsequent change of mind

and motives are of no consequence, unless the grantor had the legal right to make the subsequent documents to respondent. It is to be determined herein if she had such right.

This is not a contest between trustees and heirs. Mrs. Olmsted provided for certain heirs in both trust schemes and since these relatives disclaimed in this action they apparently are satisfied. The contest was initiated by the grantor and maker of the prior deeds above mentioned when she sued the trustees named therein to quiet her title to the properties described in said deeds. After the death of Mrs. Olmsted, the original plaintiff in the action, the contest settled down to a question as to the validity or invalidity of three of the four of said prior deeds and incidentally to the validity of the trust agreement with the bank. In its ultimate analysis it is a contest between the individual trustees of the prior deeds and the respondent bank, trustee named in the subsequent trust agreement to it.

A brief history of the documents involved is essential to the treatment of the appeal.

Millicent H. Olmsted, a widow of El Monte, Los Angeles County, was the owner on November 5, 1905, of many parcels of real estate and considerable personal property, valued at the time of the judgment at more than $500,000. On said November 5th Mrs. Olmsted made a deed of conveyance of the bulk of her estate to five trustees, with which to build and maintain in Los Angeles County a hospital to be known as the Millicent H. Olmsted Hospital. Two years later on October 12, 1907, Mrs. Olmsted, discovering that three of the grantees and trustees named in the 1905 deed were not members of the Presbyterian Church, of which church she was a member and to which church she desired her trustees to belong, filed in the superior court of Los Angeles County an *ex parte* petition in which she stated that it was her desire ''to provide for the establishment of a hospital in or near the city of Los Angeles, California, wherein indigent and worthy poor persons of both sexes might be cared for and treated without charge, as well as others'' for pay; that in order to carry out and execute said trust according to her original desires, purposes, and intentions it was necessary that the 1905 deed be annulled, canceled, and set at naught, and that another

trust deed, made in 1907, be substituted therefor. This deed, which is dated October 12, 1907, the date of filing the *ex parte* petition, was made an exhibit to the petition and is known in the record as the 1907 deed. It contains the principal but not all of the trust provisions herein involved. All five trustees accommodatingly tendered their resignations to the court.

The court heard the petition and granted it. In its order and judgment the court recited that the 1907 deed "affords and furnishes a more certain, definite and efficacious means of executing and carrying out said trust, and the wishes of the trustor in relation thereto and the court being fully advised and sufficiently informed is of the opinion that the prayer of said petition ought to be granted . . . and that the instrument of date October 12th, 1907, executed by petitioner as aforesaid, a copy of which is attached to the petition filed herein, marked Exhibit 'F' and made a part of the record in this cause, be and the same is hereby substituted for and in lieu of said original instrument." Appellants claim that this is an adjudication of the validity of the 1907 deed, binding alike on trustor and trustees. We will not have occasion to pass upon this claim and will not further refer to it.

In May, 1916, Mrs. Olmsted made another deed to her seven trustees named in the 1907 deed, of additional property, and impressed these properties with the same uses and trusts as those expressed in the 1907 deed.

Again, in April, 1920, Mrs. Olmsted made still another deed herein known as the 1920 deed in which she conveyed to her seven trustees other and all of her real estate owner by her in trust, excepting such property as may be disposed of by her by will. In this deed certain nephews and nieces are provided for and additional uses and trusts to those in the 1907 deed are created. In this 1920 deed the grantor modifies some of the trust provisions of the 1907 deed. The 1920 deed declares that all three deeds of 1907, 1916, and 1920 "shall be construed as one instrument and that the later trust conveyances (1916 and 1920 deeds) are created by her to feed the first trust, save and except to build as part of it, the memorial to her said brother" for which she makes a special grant of property, and, finally, she ratifies and confirms both the 1907 and the 1916 deeds

Later in the year in October Mrs. Olmsted and her trustees named in the three deeds above mentioned made and recorded a document wherein the three deeds are mentioned with approval and the name of the hospital by mutual agreement is changed to "Olmsted Memorial Hospital."

In the discussion herein the three deeds will be construed together and the matters therein contained will be designated herein the Walker trust.

In July, 1923, Mrs. Olmsted entered into a trust agreement with the respondent, the Security Trust & Savings Bank, herein called the bank, and on or about the same time conveyed and assigned all the property described in the Walker trust to the bank, nevertheless for certain uses and trusts designated in the trust agreement.

Both the appellants and respondent regard these instruments to respondent as hostile to the Walker trust and that the two sets of instruments cannot stand together. This court will so treat the Walker trust and the matters described and contained in the instruments to the bank, designated herein the bank trust.

Each of these three deeds of 1907, 1916, and 1920 was in form a grant, bargain, and sale deed conveying to the grantees the lands and properties therein described to have and to hold the same forever, nevertheless in trust for certain uses and trusts hereinafter mentioned and quoted when necessary. Each of these three deeds reserved a life estate to the grantor. Appellants accepted the trusts therein set forth by signing and acknowledging each of the three deeds.

No reserve of power to revoke any of said deeds by the trustor is found or expressed in the deeds, but on the contrary the deed of 1907 provides that "the trust herein created and the conveyance hereby made shall in no sense be revoked or impaired." On this point counsel for respondent admit in their briefs: "No power of revocation was reserved and none is implied." To foreclose the question of the power of the trustor to revoke the Walker trust, we cited section 2280 of the Civil Code.

All of the three deeds were duly recorded before the making of the deeds and the agreement to the bank.

Appellants do not attack the bank trust but content themselves by endeavoring to maintain and defend the Walker trust; while respondent attacks the Walker trust and severely

arraigns it. It maintains that the equitable principle that charitable trusts are favorites of the law and should be carried into effect when possible, has no special application here for the reason that if the Walker trust is held to be void the bank trust will carry out the charitable ideas of the trustor.

This court will confine its consideration to the validity or invalidity of the Walker trust, but in doing so it will have occasion to contrast and compare certain provisions of the two sets of documents containing the two trust schemes. In treating the subject of this appeal we cannot specifically notice all of the many points made by counsel in their briefs, but will cover all the essential contentions either specifically or on broad principles.

We begin with the premise that the trusts sought to be created by the deeds of 1907, 1916, and 1920, are in perpetuity and for this reason are void unless they are of a charitable nature; but we take it that the converse must be true, that if these trusts create a charity they are not void merely because they are in perpetuity (sec. 9, art. 20, state constitution; *Estate of Hinckley*, 58 Cal. 457); and in order that we may not drift too far afield in the discussion of the subject of trusts let us establish another legal monument by defining a charitable trust so that we may be guided in our course and from which monument we make take bearings.

We do not find it necessary to define a charity in our own language. In the *Matter of the Estate of Merchant*, 143 Cal. 537 [77 Pac. 475], the supreme court has approved a definition of charity which we adopt as follows: "A charity in a legal sense may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons—either by bringing their hearts under the influence of education, or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." The quotation is from Mr. Justice Gray, in *Jackson* v. *Phillips*, 14 Allen (Mass.), 556, which definition Mr. Perry says leaves nothing to be desired.

The deed of 1907 reads in part as follows: "The parties of the second part, herein called trustees, or their successors as hereinafter provided for, shall, upon the demise of the party of the first part, take immediate possession of all of said property, and shall, as soon thereafter as practicable, having due regard to the objects hereby sought to be accomplished, convert the same, in whole or in part, as to them may seem best, into cash, or good and solvent interest bearing securities, and out of the proceeds thereof said parties of the second part shall purchase suitable grounds . . . and as soon as practicable establish and maintain thereon a hospital for the care and treatment of the sick and wounded of both sexes, said hospital to be known as the 'Olmsted Memorial Presbyterian Hospital."

This deed also provides that the trustees shall "set apart and provide an endowment of $5,000 each for the maintenance of at least twenty-five free beds for the care, accommodation and treatment in said hospital of poor and worthy persons of both sexes who may be pecuniarily unable to pay the expenses of their maintenance therein; the trustees of said institution to be the judges of the indigency and worthiness of those applying for admittance to said hospital as free patients under the provisions hereof. And it is hereby expressly agreed and understood by and between the parties hereto that indigent patients admitted into said institution as herein provided shall at all times receive the same care, treatment and attention as that given and bestowed upon other patients who pay for admittance therein as herein provided. Said trustees shall also receive into said hospital other patients for care, treatment and attention, for which reasonable charges shall be made and paid, and the revenue derived therefrom shall be applied to the maintenance and operation of said institution; and the surplus thereof, if any, shall go to augment the number of free patients that may be kept and treated in said hospital, to the end that there shall at all times be kept, treated and cared for in said institution the largest number of poor and worthy patients that the finances of said institution will admit of or justify."

In her 1920 deed Mrs. Olmsted provided for the erection and maintenance of the memorial building to perpetuate the memory of her brother, Seth H. Hickcox, deceased,

which building was to be a part of the main hospital, but as a special building to be known as the Seth H. Hickcox Memorial building and the trustees "shall maintain the same for the purpose of nursing and caring for therein patients who are suffering from cancer and tubercular diseases and for such other purposes, incident and kindred, in aid of the general hospital mentioned." The deed further provides that the Hickcox Memorial building should be supplied "with the best equipment that medical and surgical science can reasonably provide . . . it being the intent and purpose of the party of the first part, in the creation of this trust, to provide for this memorial building sufficient funds to erect the same and equip and maintain the same after its construction for the benefit of persons afflicted as aforesaid."

In referring to her 1907 deed, Mrs. Olmsted declares in her 1920 deed "that the purpose of said trust as expressed therein, is that, after the death of the party of the first part, the said trustees should establish and maintain a hospital for the care and treatment of the sick and wounded of both sexes."

In executing said deeds of 1907, 1916, and 1920 the intention of Mrs. Olmsted as plainly shown on their face was to provide ample means with which her trustees after her death could and they were empowered and directed to erect and maintain a hospital for the use and benefit of persons of both sexes who may be poor, sick, wounded, or suffering from disease.

By consensus of opinion the poor, from the Mosaic law down the ages to the present, have been considered objects of charity. Those features of the Walker trust which provide for free beds for the care, accommodation, and treatment of the poor and worthy, are highly charitable in their character and the charitable mind that conceived this hospital and generously endowed it with "all her worldly goods" to be in part used to make the worthy poor well, comfortable, and happy, further enjoined upon her trustees and exacted from them written promises that indigent patients admitted to her hospital "shall at all times receive the same care, treatment and attention as that given and bestowed upon" pay patients. Her charity for the worthy poor is not only manifested in providing a place where they might

be treated, but her charitable purpose goes beyond and provides for kind and the best care without neglect or favoritism, and her broad charity was not exhausted by her thought for the poor alone, but she recognized that all humanity is heir to disease and subject to accidents and thus provided that the hospital should receive, care for, and treat the sick and wounded of both sexes without any qualification or limitation other than the capacity of the hospital. On the face of the Walker trust during fifteen years of the trustor's life it is apparent that Mrs. Olmsted gave deep and solicitous thought to the establishment and maintenance of her hospital.

In her 1920 deed she provided for the Seth H. Hickcox Memorial building and directed that it be equipped with the best and most modern hospital appliances. For what use and purpose did her charitable mind provide this building with its superb, modern equipment? "For the purpose of nursing and caring for therein patients who are suffering from cancer and tubercular diseases." Thus her charity went out to persons of whatever degree or station in life who are suffering from the two fell diseases which annually carry to the grave prematurely more of her fellow men and women than any other two diseases.

The mere statement of the purposes of the trusts refutes conclusively the contention of respondent that the 1907, 1916, and 1920 deeds are devoid of charitable features and are not charitable on their face. Measured by the legal rule or interpreted by the approved usage of language or the applied teachings of the Master, the intention and purpose of the maker of the Walker trust were to create a charitable trust. And these deeds did create a charitable trust and are valid unless for some reason hereinafter discussed the trustor destroyed the charitable features of her said deeds.

Counsel for respondent half concede that the provision in the 1907 deed for free beds is a charity but maintain that the 1920 deed totally destroys this charity and that without free beds the trust or any trust which shuts its doors to the poor and needy as distinguished from the rich, well-to-do, or those in moderate circumstances, is not a charitable trust.

In the 1920 deed Mrs. Olmsted expressed the wish to modify the provisions concerning the twenty-five free

beds because she feared that the number arbitrarily fixed might work an injury to the operation of the hospital and proceeded to say: " . . . it is the desire of the party of the first part that as many free beds be provided by the trustees as the financial condition of the hospital shall permit without reference to the number and that instead of the twenty-five beds, the number may be decreased or increased by the trustees as the hospital funds shall be sufficient to provide for the same."

Interpreted in a broad sense which the rules of construction in cases of charitable trusts permit and require, the provision of the 1920 deed did not destroy the free bed charity provided in the 1907 deed. Reading the two deeds together Mrs. Olmsted said in effect to her trustees: For fear that it might work an injury in the operation of the hospital I do not fix any arbitrary number of free beds which you shall establish and maintain for the care, accommodation and treatment in said hospital of the poor and other persons of both sexes who may be pecuniarily unable to pay the expenses of their maintenance therein, yet it is my desire that you provide as many such free beds as my endowment and the financial condition of the hospital shall permit. Evidently it was not the intention of the trustor to eliminate free beds from her trust scheme. (*Estate of Upham*, 127 Cal. 97 [59 Pac. 315].) This interpretation is further strengthened by other references in the Walker trust concerning the poor and their admissions to and treatment in the hospital. For example: Any surplus revenues derived from pay patients "shall go to augment the number of free patients that may be kept and treated in said hospital to the end that there shall at all times be kept, treated and cared for in said institution the largest number of poor and worthy patients that the finances of said institution will admit of or justify." In our seeking the intention of Mrs. Olmsted to provide for free beds for the poor we are not particularly concerned with the possibility that the trustees may so manage or mismanage the hospital as to preclude the maintenance of any free beds whatever as contended by respondent. The state through its officers and courts will see that the intention and purposes of the trustor are carried into effect. (Sec. 2269, Civ. Code.) But the free bed feature of the Walker trust could be entirely eliminated

and yet poor and worthy persons are thought of and provided for in other portions of the deed above quoted.

Also the insistence of respondent that a trust without providing for the poor is not and cannot be a charity must go unrewarded, for both the law and reason are against the contention. (*People* v. *Cogswell*, 113 Cal. 129 [35 L. R. A. 269, 45 Pac. 270].) Any person, the rich as well as the poor, may fall sick or be injured or wounded and become a fit subject for charity. (St. Luke, chapter 10, verses 30–37.) A trust may be and often is charitable in its nature, uses, and purposes without giving alms to the poor. It is true that poverty is a condition which, even when brought about by indolence and waste of life's opportunities, arrests the attention and commands the consideration of charity. Yet perhaps more worthy and deserving members of society than the ne'er-do-well poor may under certain conditions be proper objects of charity. A gift to establish and maintain a public institution where the misery and unhappiness of any person of high or low degree, rich or poor, may be considered and sanely dealt with would come within the purview of the definition of a public charity. And yet the dollar may not and would not be the sesame to open the door of such an institution.

This discussion brings us to a kindred subject— that of pay patients. It is claimed by respondent that this feature of the Walker trust makes it possible for the trustees to so operate the hospital as to exclude every poor person or any free treatment in the hospital. Such a possibility is remote and can and will be prevented by courts. (*Estate of Merchant*, 143 Cal. 541 [77 Pac. 475]; *Estate of Willey*, 128 Cal. 1 [60 Pac. 471]; *People* v. *Cogswell*, 113 Cal. 129 [35 L. R. A. 269, 45 Pac. 270].) The provision of the Walker trust allowing charges to be made for admission to or treatment in the hospital of pay patients does not make the trust noncharitable and therefore void under the law laid down in the *Estate of Sutro*, 155 Cal. 727 [102 Pac. 920]. Without taking coveted time and space to point out the difference between the Sutro trust and the Walker trust, suffice it to say that they are so dissimilar in structure and purpose as to make the *Estate of Sutro, supra,* of little or no aid in construing this provision of the Walker trust. This provision to admit and treat pay patients in the hos-

pital is a provident provision for supplementing the gift of the donor with additional means to support the hospital. The provision is not only wise, but it is also legal if the hospital is not operated for private gain. (*Burdell* v. *St. Luke's Hospital*, 37 Cal. App. 310 [173 Pac. 1008]; *In Re McDowell's Will*, 217 N. Y. 454 [Ann. Cas. 1917E, 853, L. R. A. 1916E, 1246, 112 N. E. 177]; *Butterworth* v. *Keeler*, 219 N. Y. 446 [114 N. E. 803]; *Daly's Estate*, 208 Pa. St. 58 [57 Atl. 180]; *Parks* v. *Northwestern University*, 218 Ill. 381 [4 Ann. Cas. 103, 2 L. R. A. (N. S.) 556, 75 N. E. 991].)

In her 1920 deed Mrs. Olmsted removed all question of the hospital ever being run for private gain and thereby becoming noncharitable by providing: "Lastly, it is the wish of the party of the first part and she desires and she charges the trustees that, in the general plan, conduct and operation of said hospital they shall be controlled by the following:

"1st. The said hospital shall not be run for profit;

"2nd. That the charges for treatment for patients who pay for same shall be placed at the lowest sum or sums possible taken in connection with good service." What language could be plainer?

We grant that the provision in the 1920 deed providing for certain named nephews and nieces is a noncharitable use; but certain property and funds were designated to take care of certain annuities to these kinsmen during their lives and upon the death of the last of such annuitants the remainder of such property is to be devoted to hospital purposes under the general trust scheme. This use of property to pay certain annuitants did not go beyond the lives of persons in being. Such a provision is authorized by law and did not destroy the charitable features of the Walker trust.

Respondent, perhaps anticipating that the court would hold that Mrs. Olmsted's trust scheme was charitable in character, makes its severest assault on the Walker trust on the grounds that the trust instruments contain two trusts, a passive and an active trust, the passive or primary trust to operate in her lifetime for the benefit of herself, and the active, or secondary trust, eleemosynary in its character, to take effect after her death. The respondent bank strenuously maintains that these two trusts exist in the Walker

trust, and that the trust is null and void under the principles laid down in the case of *Carpenter* v. *Cook*, 132 Cal. 621 [84 Am. St. Rep. 118, 64 Pac. 997], because it is asserted that the two trusts are inextricably interwoven and are mutually interdependent, resulting in the invalidity of the whole scheme. In support of its claim here made respondent specially cites three features of the 1907 deed as examples of passive or primary trusts, namely, the life estate reserved to the trustor; a conditional provision made for the sale of any or all the property devoted to the trust, and a conditional or optional provision to initiate the establishment and operation of the hospital during the trustor's life instead of waiting until after her death as provided in the deeds. We will take up the consideration of these provisions of the deeds in the order named.

The deeds of 1907, 1916, and 1920 each expressly reserve a life estate to the trustor. The life estate is in the following language: "It is expressly agreed and understood by and between the parties hereto that the party of the first part reserves to herself a life estate in and to all the property herein conveyed, and shall be entitled to the management thereof, and to the revenues arising therefrom, for the period of her natural life, and shall in like manner during said time be responsible for the care, maintenance and preservation of the same."

We think that the argument of respondent is based on a false conception of the meaning and purpose of the life estate. In the first place, the life estate was never a part of the trust scheme. It is an estate authorized by the Civil Code and was by express terms in the instruments themselves carved out of and reserved from the properties—the trust *res*—conveyed to the trustee. By general provisions the trust was not to be put into operation during the lifetime of the trustor. By her deeds she vested a present title in the trustees subject to the life estate and subject to the trust to be put into operation after her death. By her deeds Mrs. Olmsted conveyed to her trustees, to the appellants, a vested future interest in her properties described in said three deeds. (Secs. 693 and 694, Civ. Code.) In imposing upon herself the responsibility for the care, maintenance, and preservation of her properties, out of which she carved her life estate, she did nothing more than to express in words

what the law implies as to the duties and responsibility of a life tenant. While it is no argument in favor of the validity of the Walker trust on this point, nevertheless it is not amiss to mention that the bank trust also reserves a life estate to the maker of the trust agreement. The only difference discernible between the two is that in the Walker trust the life tenant undertakes all responsibility concerning the property during her life, whereas in the bank trust the bank in excess of caution declined any and all responsibility or liability for any waste or for any act or debt of the trustor in the management or care of said property during the life of the trustor.

The deed of 1907 provides that the trustees expressly agree that if during the life of the trustor it should be deemed to the best interests of all concerned and for the accomplishment of the purposes of the trust therein, to sell any of the properties therein described, Mrs. Olmsted ''by and with the consent and approval of said trustees, or a majority thereof, may sell and convert said property into good and solvent interest bearing securities, the revenues arising therefrom to be and belong to the party of the first part absolutely, and the principal thereof to take the place of the property so converted and to pass under this instrument; provided suitable grounds for said hospital may be purchased and paid for out of said funds, if deemed advisable.''

Mrs. Olmsted lived for more than fifteen years after she executed her 1907 deed. It may be presumed from the natural desire of humanity generally that she expected to live to a ripe old age and enjoy her ample income. Therefore to have neglected to provide a mutual power of change of form of this trust *res* would have been shortsighted. Many things may happen even in a short fifteen years that would make it advisable to sell real property and especially so in a locality where real estate values are fluctuating. Barring the quoted portion concerning the purchase of a building site the provision of the deed goes no further than to change the form of the trust *res*. The title or holding of either the life estate or remainder was not changed. The trustor, by the provision, was to enjoy the revenues which were to belong to her while the title to the principal remained in the trustees ''to take the place of the property

so converted.'' There was no primary or secondary estate created or attempted to be created. The trustor was to get nothing more than she was entitled to have and to enjoy under the original terms of the trust, namely, the rents and profits of the property. No trust was created for her benefit in her lifetime, for her life estate was not a part of the trust *res.*

And the provision to the effect that out of the principal fund suitable grounds may be purchased for the hospital was another wise and thoughtful provision. During the lifetime of the trustor an opportunity might present itself to acquire a suitable site for the hospital, while without the provision under consideration such opportunity may be lost. It cannot be said that the purchase of a site for the hospital during the lifetime of the giver was a trust, passive or active, created in her favor and for her personal benefit. But the fact is the site was not selected, nor was any property sold except one piece. The proceeds of this sale were delivered to the trustees to hold for the establishment and operation of the hospital while Mrs. Olmsted took and reserved the revenues arising out of the proceeds of such sale, in consonance with the trust scheme. At the time of the death of Mrs. Olmsted the trustees held these proceeds intact as a part of the trust estate and for the uses and purposes thereof.

The 1907 deed also has in it an agreement between the parties thereto—the trustor and trustees—that the trustor ''shall have the right at any time she may elect so to do to waive and surrender her life estate in and to any or all of the property herein conveyed, and by and with the consent and approval of said trustees, or a majority thereof, sell and convert said property in whole or in part, into cash or into interest bearing securities and with the aid and assistance of said trustees, and with their consent, approval and cooperation during the lifetime of said party of the first part, establish and put into operation said hospital in accordance with the provisions hereof.''

We can see in the quoted provision none of the elements essential to make the trust a passive trust. The purport of the provision is to the effect that at any time Mrs. Olmsted should choose to waive her life estate the property so released from the life estate may be sold by mutual consent

of trustor and trustees and the date when the hospital should be built and put into operation be advanced and the trust scheme initiated during the life of the trustor instead of waiting until after her death. No part of the trust article indicates that Mrs. Olmsted was to establish and manage the hospital alone during her life. It was not only with the consent and approval of the trustees that the hospital could be established and operated during the life of the trustor, but the trustees agreed to aid, assist, and co-operate with the trustor to ''establish and put into operation said hospital in accordance with the provisions hereof as hereinbefore set forth.'' This last quoted clause negatives the claim of respondent that Mrs. Olmsted reserved the power to establish and operate the hospital during her life ''for the benefit of herself and the hospital.'' The wish and desire to see in her lifetime the establishment and operation of her hospital of fifteen years of solicitous thought and meditation was a natural longing, which calls for neither apology nor criticism.

One or two further observations on this branch of the case: A reservation in a trust to revoke does not make void the trust. Then on what principle does the provision to sell by mutual consent of the trustor and trustees to better accomplish the purposes of the charity, and in harmony with it, destroy the trust? Certain it is that the law of passive trusts is not applicable to the provisions of the 1907 deed to sell under certain conditions therein named, but always with the consent of the trustees. The trustor was so guardful of her trust plan to build and operate a hospital for the sick, wounded, and afflicted that she provided that neither she nor her trustees, nor both together, could change, annul, alter, or modify any provision of her trust which would revoke or impair the trust. In other words, after providing the power for necessary and desirable changes with the consent of the trustees, or perchance without their consent, she added this clause: ''Provided, the trust herein created and the conveyance herein made shall in no sense be revoked or impaired.''

In support of this claim that the Walker trust contains a passive as well as an active trust which makes void the whole trust scheme, counsel for respondent cites and relies upon *Carpenter* v. *Cook,* 132 Cal. 621 [84 Am. St. Rep.

118, 64 Pac. 997], as above stated. That case involved what is known as the Willey trust. Willey made a deed in which he disposed of all his property to two grantees in trust for certain uses and purposes; that during his life the trustees were to hold the property and the rents and income "to the sole use and behoof of the trustor" and that whenever directed by him the trustees were to sell such property to such person or persons designated by the trustor and to hold the proceeds of such sale to the use and behoof of the trustor; that after the death of the trustor the trustees were "to have, hold and possess all and singular the residue and remainder of said property" in trust for certain enumerated uses and purposes. The provisions were made a part of the trustor's will. Manifestly there were two trusts created by the Willey deed—one to operate in his favor during his lifetime and the other in favor of other beneficiaries after his death. The trust scheme of the Walker trust is so dissimilar to that of the Willey trust it would seem a waste of time and space to contrast and point out the patent differences between the two trusts were it not for the insistence of counsel for respondent.

The Walker trust was not to be put into operation until after the death of the trustor, as provided in the general scheme; the Willey trust began at once and in the lifetime of the trustor. The Walker trust reserved from and carved out of the property conveyed the life estate; the Willey trust made no such provision. The Walker trust assigned no duty to the trustees during the life of the trustor except to hold a vested estate with which to build and operate a hospital after the decease of the trustor; the Willey trust imposed on the trustees an immediate duty to devote all the property conveyed to them, together with the income—not to charity, but to the personal use and behoof of the trustor both before and after sale. The Walker trust did not reserve the right to direct her trustees to sell at her will, but provided that a sale could be made in the interest of the trust by the mutual consent of trustor and trustees and that the proceeds of sale should go to the trustees to hold and to be applied for charitable purposes named, while the increase should belong to the trustor and not to the trustees; the Willey trust arbitrarily reserved the right to compel the trustees to sell any or all the property at any time dur-

ing his life and to whomsoever he chose to name and to apply the proceeds—to charity? No; "to his own use and behoof." This court in its discussion of the life estate and the provisions to sell and to advance the date of beginning to build the hospital set forth in the Walker trust decided and again decides that there was but one trust created or attempted to be created in the Walker trust. If we are right in that conclusion then *Carpenter* v. *Cook, supra,* has no application to the facts of the Walker trust. That case and the principles there laid down must have at least a primary and a secondary trust with which to deal and to compare which are absent in the Walker trust. The foregoing also answers the brief of *amicus curiae.*

■ In connection with this subject of sale of the trust property, respondent makes another claim that Mrs. Olmsted reserved the power to sell the property without the consent of her trustees, and that the natural effect of such reservation is to overthrow the whole trust scheme, leaving in Mrs. Olmsted every muniment and prerogative of title. After a general provision conveying to her trustees all of her property owned by her, or in which she may have an interest, including after-acquired property, Mrs. Olmsted, in her 1920 deed, says: "And she further provides that in case she should sell and convey any of the property herein described or described in any of the other deeds of trust, with or without the consent of said trustees, that the money or property received therefrom shall go to the said trustees in the same manner as the property so sold or conveyed would have gone. If said conveyance had not been made, it being the intent and purpose of party of the first part that all the property she now has, or which she may acquire hereafter, real, personal or mixed, except such property as may be devised by the will of the party of the first part, shall go to the said trustees for the construction and maintenance of said hospital and of said memorial to Seth H. Hickcox." Money and securities in bank are excepted from this conveyance in general terms.

In all of the provisions to sell found in the Walker trust, Mrs. Olmsted made the consent of the trustees a prerequisite to the sale. Indeed, without such provision the terms of the grant deeds of 1907, 1916, and 1920 required the consent of and signature to every conveyance of any piece or parcel

of the trust *corpus* in order to pass legal title. Taking all the deeds together and taking into consideration the context of the provision itself, it cannot be said that the provision to sell "without the consent of said trustees" is a reserve power to sell the trust property, which would thereby destroy the charity created in the deeds. She plainly said that if perchance she should sell any part of the trust property conveyed to her trustees without their consent, then the proceeds arising from such sale should go to said trustees for the same purposes, uses, and trusts as if the property had not been sold, namely: to the construction and maintenance of a charitable hospital as described in the Walker trust. The provision is clearly a limitation on her power to sell for private gain, or for any purpose except to establish and operate a hospital so described, but in any event such sale should not "revoke or impair" the Walker trust. Mrs. Olmsted never sold, or attempted to sell, any property described in the Walker trust without the consent of her trustees.

Respondent cannot successfully maintain that the six deeds and the trust agreement to it were made under an exercise of a reserve power to revoke the Walker trust, or a reserve power to sell the trust property without the consent of the grantees named in the Walker trust. The deed and instruments to the bank were made without consideration and were not a sale of property. The trust agreement recites: "No consideration was given by the trustee for such conveyances and transfers," and that the trustor paid the trustee $500 "for the acceptance and undertaking of the trust." It will hereinafter appear that the property conveyed to the respondent was not necessarily for the purpose of establishing and maintaining the same kind of a hospital as that described in the Walker trust. The bank trust, if valid, wholly destroys the Walker trust.

. The Walker trust scheme is most critically analyzed by counsel for respondent. They charge that it is void for uncertainty. One-third of their elaborate briefs is devoted to maintaining this point. There is scarcely a paragraph in the three deeds, except as to description of property, that is not either quoted or commented upon, criticised, and condemned. On the other hand, throughout their briefs they hold up before the court the bank trust as a model of a

public charitable trust in which a complete business plan is devised for the management of the trust property and for the establishment and operation of a "public charitable hospital." They suggest that this court need not be particularly concerned about invoking the *cy pres* doctrine in favor of the Walker trust for the reason that in any event the original charitable object of Mrs. Olmsted will be carried into effect through the bank trust which it is asserted "expresses the real wish of the donor."

We cannot agree with the suggestion. It is not only our duty to give due consideration to the objections of respondent to the legality of the Walker trust, but it is equally our duty to carefully consider the argument of appellants, to examine the trust scheme of the Walker trust and uphold it if it violates no principle of law and is sufficiently certain to be carried into effect. The appellants—the trustees of the Walker trust serving *without compensation*—are here doing their duty as such trustees by defending the Walker trust and maintaining that it is valid. They are entitled to a fair consideration of the question as to whether or not the deeds containing the Walker trust are null and void as found by the trial court, whatever may be the perfection or imperfection of the bank trust.

In this case the court does not find it necessary to resort to the doctrine of *cy pres* in order to sustain the Walker trust. Nevertheless a few quotations from leading cases and authorities on the attitude of courts toward charitable trusts are pertinent, since they have a direct bearing on the laws of construction. "Charitable trusts are the favorites of equity; they are construed as valid whenever possible, by applying the most liberal rules of which the nature of the case admits, and are often upheld where private trusts would fail." (11 C. J. 307.) We quote a sentence from the *Estate of Hinckley*, 58 Cal. 457: " . . . courts look with favor upon all attempted charitable donations and will endeavor to carry them into effect, if it can be done consistently with the rule of law. A bequest intended as a charity is not void, and there is no authority to construe it to be legally void, if it can possibly be made good." Again, from the *Estate of Dwyer*, 159 Cal. 680 [115 Pac. 242]: "It is well settled here that dispositions to charity are looked upon with favor and courts will uphold

all such gifts whenever made by a donor in his lifetime or by a trustor, when it can be done consistently with the rules of law''; and from the *Estate of Upham,* 127 Cal. 90 [59 Pac. 315] : ''It must be remembered that charities—both as to trustees and the beneficiaries—are more liberally construed than gifts to individuals.'' ''An interpretation which gives effect is preferred to one which makes void.'' (Sec. 3541, Civ. Code.)

California, perhaps, is more advanced than any other state in the Union in establishing and maintaining public charities; also in encouraging individuals to dedicate their private fortunes to public charitable uses. Such privately established charities are beneficial to the welfare of society and tend to lessen the cost of government.

In the light of the principles laid down in the cases and law above quoted and in consonance with such policy of the state we proceed to consider the question of the alleged uncertainties of the Walker trust.

The certainty or uncertainty of an express trust, whether contained in deeds or a trust agreement, must be determined, like any other contract, by the rules or laws of construction and the code essentials for a valid trust.

If the deed or trust instrument shows the intention of the trustor to create a charitable trust and the interpretation of the language creating the trust discloses the principal or essential elements of contracts and of a valid trust, such deed or instrument is not void for want of certainty.

The five essential elements of every valid, voluntary trust are: (1) The intention to create the trust, (2) the subject matter of the trust, (3) the purpose of the trust, (4) the beneficiary of the trust and (5) the acceptance of the trust by the trustee. The deed or instrument containing the trust must indicate with reasonable certainty each and every one of these essential elements. (Secs. 2221 and 2222, Civ. Code.)

In the deeds of 1907, 1916, and 1920 Mrs. Olmsted indicates her intention to create a trust—to establish and maintain a public charitable hospital for the benefit of the sick and wounded of both sexes where the poor could have free beds and considerate and efficient treatment; where persons afflicted with cancer and ''consumption'' could be treated and cared for in a modern well-equipped hospital.

Her intention is not only reasonably certain, fulfilling the law's requirement, but it is so plain and explicit that even the wayfaring man may run and read and understand.

Can so much be said of the bank trust? The trust agreement of the bank granted all the property described in the Walker trust to the bank in trust and for the uses and purposes: To hold, maintain, sell, assign, convert, lease, mortgage, exchange with the bank's own securities, invest, loan, purchase, contract buildings; to equip, to furnish and operate and maintain a charitable hospital; to organize another corporation to carry out the purposes of the trust contained in the trust agreement to the bank and to convey any and all of the property described in the trust to such organization, "on such terms and subject to such conditions as it (the bank) may deem advisable"; to accept or exchange stock of such corporation for its own stock; to employ all agents and attorneys and to fix their compensation; to reimburse itself for outlays, fees, and expenditures; to be compensated in the management of the properties and trust; to be released from nearly every conceivable liability in the management and operation of the trust and trust properties; "to sell and convert into cash sufficient of the principal of the trust estate to erect or cause to be erected a public charitable hospital in, or in the vicinity of, the city of Los Angeles . . . to be forever known as Olmsted Memorial Hospital"; to have "full and absolute discretion" in the erection and operation and maintenance of the hospital. The trust finally provides that for the purpose of indemnifying the trustee against all liability, and to secure the bank for any advances, losses, and expenses made or suffered by it, the trustor "hereby creates and grants to the trustee and it shall have a first and prior charge and lien on the entire trust estate both income and capital."

We submit there is not a word in the bank trust that indicates that Mrs. Olmsted intended to create a charitable trust except the provisions to erect, furnish and operate a "Public Charitable Hospital." The character of the charity is absolutely in the discretion of the trustee (sec. 2269, Civ. Code.) The trustees could make, establish, and maintain a hospital for the insane, or any other one or more of the different eleemosynary charities and yet not violate any *expressed* intention of the donor. The intention to create a charitable

trust is vague and uncertain in the bank trust; but to what legal degree of uncertainty we are not called upon to determine. Suffice it to be shown and held that the Walker trust expresses a clear intention to create a public charitable hospital of a particular character.

We return to the essential elements of a valid trust. The subject matter of the Walker trust is more than reasonably certain. The properties conveyed, both real and personal, are accurately described and identified, being practically the same properties as those described in the trust agreement and deeds to the bank.

The industry of counsel for respondent has found some fault with the mode of dealing with the trust *res* of the Walker trust. Some of these objections have already been dealt with and answered herein and some are deemed of little or no consequence. We will specially notice one criticism and dispose of it here. ▮▮▮ The trustor stated in her 1920 deed that she left it to the discretion of her trustees whether or not they should sell a certain piece of property known as the San Pedro property, within a reasonable time after her death, or to hold it for a rising market; that she did not wish to arbitrarily bind their discretion, but wished them to act freely and use their own discretion in the matter "except that it is her desire that said memorial building and that said general hospital be erected and put into working operation as soon as possible." The claim is that this provision is tantamount to a direction for the trustees to indefinitely hold this property which it is claimed would be a violation of the mandate of the law of charitable trusts; also that if the trustees withhold the San Pedro property from sale it would make the trust *res* uncertain; that such holdings would be in perpetuity, thereby destroying the charitable feature of the trust. The provision in our judgment is not a direction or a suggestion that the trustees shall hold the San Pedro property in perpetuity in violation of the constitution or any law of the state, as argued by respondent. It is only a business suggestion with an inference drawn from her language that the trustees must not hold it too long for a rising market if by so doing the erection and operation of the hospital be unduly delayed. It must be presumed that the trustees will do their duty and devote the property to charity, as positively directed

in the trust scheme, and if they do not they can be compelled to do so. (Sec. 2269, Civ. Code; *People* v. *Cogswell*, 113 Cal. 129 [35 L. R. A. 269, 45 Pac. 270].) If the court should hold this provision of the 1920 deed illegal it would affect the San Pedro property only and not make void the whole instrument. (*Estate of Willey*, 128 Cal. 1 [60 Pac. 471].) In the event of the court holding the provision illegal the Walker trust by explicit language rededicates the property to the uses and trusts described in the deeds.

The Walker trust is at least reasonably certain as to its purpose clearly complying with the code requirement. This purpose is shown by the intention of the trustor to establish and maintain a charitable hospital for the wounded, sick, and needy. Again we ask, does the bank trust display the purpose of the donor in certain terms when it goes no further than to direct her trustees to erect or cause to be erected a public charitable hospital and to "pay all costs and expenses in furnishing, erecting, operating and managing the charitable hospital"?

Again, the Walker trust is more than reasonably certain as to beneficiaries: They are the "sick and wounded of both sexes"; "the poor and worthy persons of both sexes"; "patients who are suffering from cancer and tubercular diseases." The trust does not attempt to limit the number of beneficiaries and is therefore within the rule laid down in the definition of charitable trusts cited hereinabove. The bank trust is sufficiently indefinite as to the essential element of beneficiaries, inasmuch as it names none at all for any particular charity. It is true it says "that the hospital shall be nonsectarian and for the use and benefit of all persons alike," and half apologizing for directing the power and discretion of her trustees the trustor indicates her desire "without, however, in any way limiting or restricting the character of the hospital . . . persons in accord and harmony with the doctrine and teachings of the Presbyterian Church be admitted and cared for in such hospital so far as practical and consistent with the general character and purpose of this charity." "This charity" is nowhere in the bank trust described, mentioned, or defined except in the words "public charitable hospital." The bank trust scheme is businesslike for the management of the property by the trustees, but therein the quality of charity is strained. Be-

tween the bank trust and the Walker trust there is little in common except the name "Olmsted Memorial Hospital." Therefore Mrs. Olmsted's intention to carry out her original ideas in the later bank instrument is not manifested or even suggested.

There can be no doubt about the certainty of the acceptance of the trustees of the Walker trust, for they signed, acknowledged, and agreed to the contents of each of the three deeds. The essential code element of certainty in this respect is beyond cavil.

As to the religious qualifications of the trustees, the courts are open to determine that question if necessary as well as to appoint trustees to carry into effect valid trusts. (Secs. 2269 and 2287, Civ. Code.)

In our decision in this cause we have not gone far into the realms of common-law trusts. In our entrance into and way out of the half-explored realms of trusts we have found our codes and laws sufficient light and guides. So, if counsel think we should have gone further with them into the labyrinths and mazes of trusts, pray do not charge us with being timid to do so, but, rather, that we did not find it necessary to explore further.

The court holds that the deeds of 1907, 1916, and 1920 created a valid charitable trust; that these deeds were not revoked by Millicent H. Olmsted in her lifetime, and could not be revoked by her without the consent of the trustees, signatory parties to the deeds, which consent the trial court found was never given or obtained; that all three deeds of 1907, 1916, and 1920 were duly recorded; that the law of recordation was binding on all parties; that the bank took the trust agreement and the deeds to it, without paying any consideration therefor and with constructive notice as to the real estate and actual notice as to the personal property therein described; that said deeds of 1907, 1916, and 1920 vested the title to the whole of the property both real and personal in appellants, the grantees and trustees named in said deeds, subject only to the execution of the charitable trusts therein provided; that the deeds of conveyance and the trust agreement to the respondent set forth in the cross-complaint of the bank purporting to convey said properties to the bank, are without force or effect to grant, transfer,

or convey any right, title, or interest of whatever nature in and to the properties described in the Walker trust.

The trial court allowed $7,500 attorneys' fees each to the plaintiff, to the trustees of the Walker trust and to the trustee of the bank trust.

As special administrator, substituted plaintiff herein, plaintiff undertook to maintain this action for the avowed purpose of obtaining all of the property of the trust for the heirs and estate of Millicent H. Olmsted, deceased. In no proper sense can the action of the special administrator be for the benefit of the trust estate. It was exactly the opposite. It was for the benefit of the heirs of the decedent and they or the estate of the decedent alone were to receive the property free from the trust, if the plaintiff should succeed in the action. Plaintiff's purpose was to destroy and not to benefit or sustain either the Walker or the bank trust. His claim, therefore, for attorneys' fees will be disallowed. (*Hobbs* v. *McLean*, 117 U. S. 567, 582 [29 L. Ed. 940, 6 Sup. Ct. Rep. 870].) This case has been frequently cited and followed. (Rose's Notes U. S. Reports, vol. 13, p. 440.)

The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust. So far as the allowance of attorneys' fees to the Walker trustees is concerned, there can be no doubt as to its propriety in view of our decision. *Estate of Duffill*, 188 Cal. 556 [206 Pac. 42], holds that it is the right and duty of a trustee to employ counsel in the prosecution or defense of an action where in the proper administration of the trust such action is necessary for the preservation of the trust, and that such trustee may be reimbursed for such expenditures out of the trust fund. (*Estate of O'Connor*, 2 Cal. App. 470 [84 Pac. 317].)

In respect to the allowance of counsel fees to the bank trustee a somewhat different question is presented. In view of our conclusion upon the main issue of the case the bank trustee, in one respect, was an unsuccessful litigant claiming the trust property as against the true trustees. However, the purpose of the part of the litigation conducted by the bank trustee has also some analogy to the part conducted by the Walker trustee, in that it was for the benefit of the only trust fund involved in this case. The bank trustee did not

begin this litigation. This action was commenced and prosecuted up to the time of her demise by the common trustor of the Walker trust and the bank trust. The object of the litigation by the trustor was presumably in favor of the bank trust and against the Walker trust. After the death of the original plaintiff in the action the bank was drawn into the litigation by subsequent pleadings. It must be borne in mind that it was equally the duty of the bank trustee to defend its trust when attacked, as it was the duty of the Walker trustees to defend and maintain their trust when attacked. (See *Estate of Duffill, supra.*) It must also be remembered that the trust *res* in the two trusts is the same and that the purpose of the two trusts was to establish and maintain a public charitable hospital. The fact that the beneficiaries in the two trusts may in a sense be different, is immaterial. It was the duty of the trustees of each trust to defend and maintain their respective trusts for the benefit of the beneficiaries mentioned therein. That the part of the litigation conducted by the bank trustee was for the benefit of the trust fund is determined for us by the finding of the court, which reads: "Plaintiff, the Walker parties and the bank, all did, and each of them did, participate in this action to the extent that they have participated in good faith and in compliance with their duties; and that such participation was necessary for the determination of the validity or invalidity of the various instruments involved in this action and of the trust therein provided therefor, and this action has inured to the benefit of the trust property and the trust desired to be imposed thereon by the said Olmsted; and this action was necessary in order to clear and establish the true status and title to the trust property, in order that the uses and trusts to which it had been put should be finally determined and established." This appeal being upon the judgment-roll alone, we assume that there was ample evidence to support this finding so far as the Walker parties and the bank trustee are concerned. We think the action of the bank trustee in taking part in this litigation is to be governed by the rule which allows compensation out of the trust fund to a trustee who has conducted necessary litigation or court proceedings to obtain an interpretation of the trust provisions and is not ruled by the decisions which

deny such compensation to one who claims the trust fund as an adversary against the beneficiaries and those interested in the trust. The action of the plaintiff against the two groups of trustees was not for the benefit of the trust, and had the plaintiff never filed the suit the trust and the trust fund would be as secure as after the action was tried. But the administration of the trust could not proceed in view of the two conflicting groups of trust deeds and trust agreement until a determination by court had been made deciding which group of documents controlled the trust. Whatever differences there are between the Walker trust and the bank trust the fund and the trustor are the same. The litigation which cleared the way for the administration of the charity was a benefit to the trust. By virtue of the unusual act of the decedent in executing two sets of trust documents the court proceedings were made inevitable. By the execution of the bank deeds and trust agreement a duty was cast upon the trustee named therein to defend the trust from failure if possible. This was a duty which the trustee owed to the trust fund and those interested therein, and for this reason it is proper to allow the bank trustee compensation for attorneys' fees out of the trust fund for which the service was rendered.

We conclude, therefore, that the allowance of attorneys' fees to the Walker trustees and to the bank trustee should be affirmed, and the reward to the plaintiff should be disallowed.

It is hereby ordered that the judgment be reversed and the trial court is directed to enter judgment in favor of the appellants and in accordance with this decision.

Sturtevant, J., and Koford, P. J., concurred.