[Civ. No. 19589. Second Dist., Div. Two. Nov. 13, 1953.]

Estate of PAUL F. VOKAL, Deceased. ROMEYN B. SAMMONS, Appellant, v. CHARLES DAVISON et al., Respondents.

J. Marion Wright for Appellant.

Lawler, Felix & Hall and Edward T. Butler for Respondents.

MOORE, P. J.—As one of the trustees and as the attorney for the testamentary trust created by decedent, appellant and his cotrustee in January, 1952, filed the first account current of the trust and presented their claim for trustee's fees. Also, at the same time appellant filed his *ex parte petition* for allowance of attorney's fees in the amount of $12,000 for services alleged to have been performed for the trust. The court having ordered service of the petition, Freda Vokal, surviving wife of

decedent, and their son, Donald P. Vokal, beneficiaries of the trust, and Charles Davison, cotrustee, filed objections to the allowance of the attorney's account. Appellant thereupon retained Marion Wright, Esquire, to defend his claim to such fees.

Six days were consumed in the trial of the objections to the first account current. By reason of his research, conferences, attendance upon the hearing and study of previous records of the trust, Attorney Wright made demand upon the trustees for $1,362.50. Such demand having been rejected, appellant filed with the court his petition for "instructions to pay attorney's fees for services rendered trustee." The contest over appellant's petition closed with the court's order sustaining the objections, denying the petition and adjudging that the charges of appellant for services alleged to have been rendered as such attorney are not chargeable against the trust estate or its income. From such order comes this appeal.

Appellant contends that the service of counsel rendered to him as trustee in resisting efforts to remove him and to surcharge his account are necessary to the proper administration, preservation and execution of the trust; that it is the duty of the testamentary trustees to resist efforts to remove him or to surcharge his accounts and, therefore, the trust becomes obligated to reimburse him for his expense of such resistance.

Such contentions are beside the mark. When appellant filed the first account current and his ex parte petition it was the duty of the trustees either to approve and pay the charges of the attorney or to reject his account and resist payment to the last. The latter is exactly what the objectors did at the hearing on appellant's ex parte petition. They concluded and contended that the charges of appellant were exorbitant and illegal.* He claimed $15 per hour for 40 hours devoted to his personally typing copies of documents and in performing messenger services. He made a charge for 84 hours expended in transferring to the trust, and in the sale of, listed securities and for 38 additional hours in writing letters and in making telephone calls with reference to those securities for which he made a charge of $1,830. Also, he included in his account 55 hours expended in preparation of the executor's supplemental account relative to a group of bonds valued at $21,000 which had been reserved by the estate to meet possible tax deficiencies. For such ser-

---

*No objection was made to the account of the "trustees" for their services in the sum of $3,350.

vice he had demanded payment of $825. Not only were such labors done for the benefit of the Vokal estate, but they constituted a part of the legal work for which the estate's attorney would draw statutory fees.

In addition to his excessive charges for his services rendered to the trust, appellant listed services he claimed to have rendered the Vokal estate. The court found on the trial of the instant matters that out of the 679 hours for which appellant demanded compensation from the trust, 304 hours had been expended in the administration of the Vokal estate, for which appellant had already been paid. In his first statement to the court filed January 21, 1950, he presented a claim for $21,635.58 for trustee and attorney's fees. In advising the court concerning that claim, appellant, then its attorney and an executor of the estate, said, ''Excepting routine matters therefrom the petitioner has expended in excess of 300 days in the performance of his duties and will be required to expend an estimated 60-90 more before pending matters are disposed of.''

A study of the record discloses that such charges were not wholly a case of unintentional debits against the estate or the trust. When he stated in closing the estate that he would be required to expend from 60 to 90 days more of service for the fees he had included in the charge of $21,635.58, he could have intended nothing other than that the alleged ''60-90 more days'' of service would be given the estate for which $21,635.58 would have already been paid him. It was a substantial cause for the award to appellant of the latter sum for all his legal services past and future to the estate. Thereafter, as attorney for the trust, appellant demanded payment of some of the same items included in his executor's report. For instance, as an executor he had been paid for his services relating to federal and state taxes on inheritances and income. But when he made up his first account current and his ex parte petition for fees as attorney for the trust he charged 68 hours of time expended on the identical matters for which the estate had already paid him. If the time expended in transferring the securities retained by the executors was all or part of the ''60-90 more'' days charged for future legal services in the final report of the executors and included in the $21,635.58 paid, why should he have charged it as a service performed for the trust two years after he had been paid for it by the estate? The court below determined that it was a duplicate charge and the facts justify the finding.

Another item charged in appellant's account for legal services was that of renegotiation of excess profit taxes. He had already been paid by the estate for such services. Not only had he been paid but his service proved to be of no benefit to the estate for the reason that he had failed duly to file claims for a refund of such tax. But his charges included those for labors beyond the trust. He expended 28 hours of legal service on the personal affairs of beneficiary Rogers and charged the item to the Vokal trust. He made charges against the trust for legal service rendered to a stranger to the trust for drawing a contract for a beneficiary and for advising as to the law of domestic relations.

Appellant deems himself to have been aggrieved by the trial court's overruling his objections to the admission of any reference to the service for, and the charges he had made against, the estate and the award made by the probate court. Particularly does he inveigh against the court's admitting in evidence the facts concerning the award to appellant of $21,635.58 at the time of settling the final account of the executors, which he says is a final order. The record discloses that such proof was pertinent to the issue of whether appellant was entitled to *any* item of his claim.

In his ex parte petition appellant had included service in the execution of the will and in the administration of the estate of decedent. In the trial of the first account current it was proved that appellant had obtained a judgment against the estate for $21,635.58 for commissions and fees as executor and for services as attorney for the estate, whereas there was due him only $14,635.58. At the trial it was the duty of objectors to obtain from appellant a surcharge of the $7,000. The latter sum had been procured by appellant in the following manner: While still acting as attorney for decedent's estate, he sent two statements to the office of decedent's business which had been operated under the fictitious name of "Special Tools and Machinery Company." He collected the $7,000 without order of court. When appellant prepared his final account as executor, in describing his services for which he demanded fees, he included the same items for which he had already collected the $7,000. In no statement or pleading thereafter did he acknowledge the $7,000 to have been paid. Neither did he, at the hearing of the estate's final account and his demand for $21,635.58, advise the commissioner who presided that he had already received the $7,000. But he prepared the formal order distributing the trust estate,

subject to his charge of $21.635.58. By his previous collection of the $7,000, the order for its duplicate payment and the concealment of those facts from the court, his cotrustee and the beneficiaries, appellant obtained an advantage and exposed himself to the temptation to act contrary to their best interests. Appellant contends that the trial of his accounts as executor and as attorney for the estate prejudiced his claim for the services listed in his ex parte petition. He insists that at the hearing on the first account current, the only issue was the value of the services he had reported in his "petition for fees." Such contention cannot be approved. If the charges for the services itemized in his ex parte petition had previously been paid, it could cause no prejudice to show that fact wherever or whenever or however such payment might have been made. If he held a judgment of record for $7,000 against the estate, was it not late enough to demand a surcharge thereof? The trust is a mere succession of the estate. The beneficiaries are identical; the assets are exactly the same with the exception of the diminution or augmentation that may have resulted from probate of decedent's estate or from the operation of the business.

Appellant's charges against the estate for the services of Attorney Wright in the sum of $1,362.50 were noncompensable. While appellant was awarded $2,000 for his services as trustee, his demand for payment of his "legal services" was contested and rejected. Such alleged services were foreign to the trust and contributed no benefit to the trust estate. (*Dingwell* v. *Seymour*, 91 Cal.App. 483, 513 [267 P. 327].)

In view of the facts found, in order to authorize payment of the account rendered by appellant, the trust would have to pay a trustee for a disservice to the trust. In all matters connected with his trust, a trustee is bound to act in the highest good faith towards his beneficiary and may not obtain any advantage by the slightest misrepresentation. Concealment, threat, or adverse pressure of any kind is unlawful as long as the confidential relation exists. The trustee or other fiduciary owes undivided duty to his beneficiary and cannot place himself in any position which would expose him to the temptation of acting contrary to the best interests of his beneficiaries. (*Overell* v. *Overell*, 78 Cal.App. 251, 256, 258 [248 P. 310].) Any violation of such duties constitutes a fraud against the beneficiaries.

(*Churchill* v. *Peters,* 57 Cal.App.2d 521, 531 [134 P.2d 841];
*Fields* v. *Michael,* 91 Cal.App.2d 443, 448 [205 P.2d 402].)

Moreover, a trustee is subject to removal whenever his private interests conflict with his trust duties. (*Moore* v. *Bowes,* 8 Cal.2d 162, 165 [64 P.2d 423].) While there was no attempt by objectors to remove appellant from office, it was not inappropriate to appraise his lack of loyalty to the trust by showing his disinterested, if not adversary, acts. Objectors' sole purpose in the proceeding was to obtain a full satisfaction of the judgment he held against the estate for $21,635.58 which had been allowed for his service as executor and attorney for the estate and to defeat any allowances for his repetitious claims, and his demands for excessive charges. By their resistance to his claims they caused him to acknowledge his error as to the $7,000 item and to correct his wrong. Had he not done so, the court would have made an order for the surcharge just as it denied his many unusual charges.

Because he had the hardihood to resist the demands of objectors by employing an attorney to appear in court and contest their objections, must the beneficiaries suffer the expense of such employment? Both reason and ethics compel a negative. When a beneficiary finds it necessary to contest the unfair charges of a trustee and to have the latter's account surcharged for sums that have already been paid, it is shocking to say that he must pay not only his own attorney to effect his purpose, but also, the fees of the counsel employed by the faithless or careless trustee for resisting such action of the beneficiary. (See *Metzenbaum* v. *Metzenbaum,* 115 Cal.App.2d 395, 401 [252 P.2d 31, 996].) To pay such an expense of a trustee would be to place a premium on his dishonesty or indifference to duty and at the same time penalize the beneficiary.

The instant proceeding was instituted by appellant for the sole purpose of compelling the trust to pay Mr. Wright's fees for prosecuting appellant's demand. But even if, in the trial of the first account current, appellant's removal had been an issue he could not be reimbursed for his payment of counsel for attempting to collect exorbitant charges made as attorney for the trust. Since appellant's removal was not an issue at the hearing of the first account current, it played no part below in the present matter, and, therefore, cannot be considered on appeal. (3 Cal.Jur.2d 604.)

Furthermore, if his removal had been an issue at the trial of the first account current as contended, appellant would

not be entitled to his attorney's fees. (*In re Titcomb,* 80 Misc. 612 [142 N.Y.S. 1030, 10 Mills 373].) In the Titcomb case, the trustee purchased certain bonds without authority of court. While the estate was in probate he sold the bonds and reported the sale. He was denied compensation for counsel retained to defend him against removal for his unauthorized act. The court there said, ''There can be no allowance to the trustee for fees incurred in the proceeding, if by reason of his having improperly applied the moneys of the estate or invested the same in securities unauthorized by law, he was at the time of the commencement of the proceeding unfit for the due execution of his office. Not only were these bonds a form of security unauthorized by law, but in the taking of them the interests of the estate were subordinated to other interests. So much of the items of counsel fees as were incurred in the removal proceeding must therefore be disallowed.'' If a trustee, who has merely made an unauthorized investment of trust funds without loss, is not entitled to reimbursement for counsel fees in defending himself, then a trustee who as attorney for his trust has made unauthorized charges against a trust and had taken a judgment against the estate which became the corpus of the trust estate for $7,000 more than was due him and permitted it to remain of record until he was moved by fear either of public opinion or judicial decree to acknowledge satisfaction thereof, should be required to pay his own expense in defending his unjust claim.

Also, by the same proceeding, appellant's attempt to collect certain noncompensable claims for several thousand dollars was defeated. In other words, Mr. Wright was retained by appellant to defend and establish appellant's right to $12,000 to which the court in this very proceeding adjudged he was not entitled. It included sums far in excess of those customarily charged for such services and in order to defeat appellant's claim thereto the beneficiaries were required to employ counsel to protect the trust estate.

■ After attacking the trust by urging the payment of unjust charges, the trustee is not entitled to collect from the trust his own counsel fees. That would be paying for a service against the trust. (*Bogle* v. *Bogle,* 51 N.M. 474 [188 P.2d 181, 183].) Where a trustee by reason of his own greed or indifference has breached his duty to the trust and has thereby brought on litigation against it his expense must be

borne out of his own property. (*Dickerson* v. *Camden Trust Co.*, 1 N.J. 459 [64 A.2d 214, 218]; *Lape's Administrator* v. *Jones*, 12 Ky. 875 [15 S.W. 658].) The fees of an attorney whose services in trust litigation were for a trustee and were detrimental to the trust itself are not chargeable to the trust. (*Estate of McLellan*, 14 Cal.App.2d 271, 274 [57 P.2d 1338].) ▮ A trustee cannot compel the trust to pay his attorney's fees unless the services so employed were incurred in the management and preservation of the trust estate. Certainly, he cannot incur indebtedness for fees incurred in litigation hostile to the estate. (*Ellis* v. *King*, 336 Ill.App. 298 [83 N.E.2d 367].) ▮ It follows that appellant, having employed Attorney Wright to serve him by attempting to enforce appellant's personal claim against the trust to its detriment, cannot collect from the trust the value of such attorney's services. (*Estate of McLellan, supra.*)

There is another reason why the court below properly rejected appellant's claim against the trust for Mr. Wright's services. It was found that appellant sought compensation for 141 hours of his own time he had served the trust. ▮ It is the invariable rule of the courts to reject demands of trustees for services they employed themselves to perform as attorneys. (*Estate of Scherer*, 58 Cal.App.2d 133, 139 [136 P.2d 103].) Also, it was there held that where an executor or the testamentary trustee is himself a practicing lawyer, and elects to act as his own attorney in matters incident to the administration of the trust estate, he will not be permitted to receive an allowance against the trust estate for his professional services. (*Estate of Parker*, 200 Cal. 132, 135 [251 P. 907, 49 A.L.R. 1025].) ▮ If he is not entitled to compensation for his own services incident to the administration of the trust, why should he collect for the services of another lawyer employed to enforce payment of a claim against the trust?

Because the fees of Mr. Wright are not proper expenses of the trust and are not payable out of the trust estate, on review, the evidence will be viewed in the light most favorable to the judgment. The findings will not be disturbed if there is any substantial evidence to support them. (*Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 96 [172 P.2d 725].) ▮ A court sitting in equity is vested with wide discretion in awarding counsel fees for services to a trust and its findings will not be disturbed in the absence of a showing of a palpable abuse of such discretion. (Prob.

Code, § 1122; *Estate of Willardson,* 101 Cal.App.2d 777, 780 [226 P.2d 369]; *Johns* v. *Peterson,* 52 Cal.App.2d 720, 724 [126 P.2d 903]; 4 Cal.Jur.2d 471.)

Because the litigation for which appellant demands compensation was of no benefit to the trust and was caused by no fault of the beneficiaries, the expense thereof must be borne personally by appellant who caused the controversy and incurred the debt. (*Dingwell* v. *Seymour,* 91 Cal.App. 483, 513 [267 P. 327]; *Dickerson* v. *Camden Trust Co.,* 1 N.J. 459 [64 A. 214, 218].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.