Filed 4/1/16  Estate of Blevins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| Estates of BAILEY NICOLE BLEVINS et al., Minors. | |
| | D067653 |
| SONJA K. BLEVINS, | |
| Petitioner and Appellant, | (Super. Ct. No. 37-2007-00101025-PR-GE-CTL) |
| v. | |
| HEATHER LEIGH BLEVINS, | |
| Objector and Respondent. | |
| SELTZER CAPLAN McMAHON VITEK et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Motion denied; order affirmed.

Jennifer S. Betts, for Petitioner and Appellant.

Valerie N. Lankford, under appointment by the Court of Appeal, for Objector and Respondent.

Seltzer Caplan McMahon Vitek and Parisa Weiss, Andrea N. Myers, for Respondents.

Sonja Blevins, as guardian of the estate of her daughters Bailey and Heather Blevins, appeals an order denying her petition to terminate the guardianship, dispense with an accounting, and for other relief. Sonja contends the court erred in various respects by denying her petition and awarding attorney's fees to a guardian ad litem it had appointed for Heather. We disagree with Sonja's contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

As required by the rules of appellate procedure, we state the facts in the light most favorable to the appealed order. (*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 532, fn. 1.) Additional facts will be discussed where relevant in the following section.

Sonja and her daughters Bailey and Heather entered into a settlement agreement with the City of San Diego (City) to resolve claims arising from the accidental death of Scot Blevins, Sonja's husband and the father of Bailey and Heather. (*Blevins v. City of San Diego* (Super. Ct. San Diego County, 2006, No. GIC853685).)

As part of the settlement, the City agreed to make periodic payments to Sonja, Bailey, and Heather. The settlement agreement provided for monthly payments of $1,100 to "Sonja Blevins as Guardian of the Estate of Bailey Blevins" from 2007 through 2014 and $1,100 to "Sonja Blevins as Guardian of the Estate of Heather Blevins" from 2007 through 2016. The settlement agreement also provided for increasing monthly payments to "Sonja Blevins, Individually," structured as follows: $1,100 from 2007

2

through 2014; $2,200 from 2014 through 2016; $3,300 for two months in 2016; and $1,961.76 thereafter. Bailey and Heather also received lump sum payments on their sixteenth birthdays, monthly college stipends ($1,000 for Bailey from 2014 through 2018 and $1,100 for Heather from 2016 through 2020), and semiannual college tuition payments ($11,900.52 for Bailey from 2014 through 2018 and $13,500.37 for Heather from 2016 through 2020). In the settlement agreement, the City reserved the right to fund the payments through the purchase of an annuity from the Metropolitan Life Insurance Company (MetLife Insurance) and to assign the obligation to make payments to MetLife Tower Resources Group, Inc. (Tower).[1]

The guardian ad litem for Bailey and Nicole, by and through her counsel Alan Pinkerton (who was also counsel for Sonja), petitioned the trial court for approval of the settlement agreement. The petitions described the periodic payments contained in the settlement agreement, including the monthly payments of $1,100 to Sonja Blevins "as Guardian of the Estate[s]" of Bailey and Heather. The petitions characterized the payments to Sonja Blevins "as Guardian for the Estate[s]" of Bailey and Heather as payments to or for the benefit of Bailey and Heather and as part of each minor's

---

[1] The settlement agreement followed a written mediation agreement outlining the terms of the settlement. Among other terms, the mediation agreement included the City's commitment to pay $900,000 to Sonja, Bailey, and Heather "to be structured, all or part, by agreement of plaintiffs." Sonja and her counsel requested quotations for structured annuity policies from MetLife Insurance based on this sum. The quotations reflected three annuities, one each for Sonja, Bailey, and Heather. The annuity quotation for Sonja generally provided for monthly payments of $3,300 from 2007 through 2016 and monthly payments of 1,961.76 thereafter. The annuities for Bailey and Heather generally provided for the same lump sum payments on their sixteenth birthdays, monthly college stipends, and semiannual college tuition payments described above.

3

individual settlement. The petitions stated, "There is no guardianship of the estate of the minor . . . . Petitioner requests that the balance of the proceeds of the settlement or judgment be disbursed as follows . . . . [¶] $186,803.06 [or, for Heather, $207,340.59] of money will be invested in a single-premium deferred annuity, subject to withdrawal only upon the authorization of the court."

The trial court approved the settlements. The court's orders described the payment terms in the same manner as the petitions, including the two monthly payments of $1,100 to Sonja Blevins "as Guardian of the Estate[s]" of Bailey and Heather. Following approval, MetLife Insurance issued three annuities, all of which were owned by Tower. The first annuity named Sonja as the "Measuring Life" and provided for monthly payments (to a payee designed by Tower) of $3,300 from 2007 through 2016 and $1,961.76 thereafter. The second and third annuities named Bailey and Heather as their respective "Measuring Li[ves]" and provided for the sixteen birthday, college stipend, and college tuition payments described in the settlement agreement, all to payees designated by Tower.

Sonja, through counsel, petitioned the probate court for guardianship over Bailey and Heather's estates. The petition explained the reason for the guardianship as follows: "A settlement was reached in said case which included, inter alia, payments of $1,100 per month for each of the minor children payable to petitioner as guardian of the estate of the minor children. On November 8, 2006, [an] order was made in that proceeding approving the compromise of the action and the settlement agreement reached by the parties. . . . The appointment of petitioner as guardian for the estate of the minor

4

children is necessary to carry out the terms of the minor's compromise." The probate court approved the appointment.

Sonja, through counsel, filed an initial inventory and appraisal of Bailey and Heather's guardianship estates. Each included an appraisal of their structured settlement, consistent with the disbursement statement in the petitions to approve Bailey and Heather's settlements: $186,803.06 and $207,340.59. Sonja, again through counsel, later obtained an order allowing her to support Bailey and Heather with their monthly payments from the settlement.

A year later, through counsel, Sonja filed a first accounting of the guardianship estates. The accounting listed the monthly $1,100 payments to Bailey and Heather as part of the guardianship. The structured settlements also continued to be included as guardianship assets. The court approved Sonja's first accounting and awarded attorney's fees from the guardianship estate. Soon thereafter, Sonja's counsel filed a motion to be relieved and for additional attorney's fees, which the court granted.

Sonja did not appear at the next scheduled review hearing, and the court suspended her powers as guardian. The court directed the public guardian to take custody of the guardianship funds and later appointed the public guardian to replace Sonja. Sonia, in propria persona, filed an ex parte application to be reappointed as guardian, alleging that she had miscalendared the date of the review hearing and appeared in court a day late. The court denied the application without prejudice and ordered Sonja to appear at the next scheduled hearing. Several months later, the court reappointed Sonja as guardian.

5

Sonja, through her new attorneys Rosemary Perna and Camille Wang, filed a second accounting of the guardianship estates. This accounting again listed the monthly $1,100 payments to Bailey and Heather as part of the guardianship and the structured settlements as guardianship assets. Sonja, though counsel, also filed a correction to the first accounting to recharacterize the $1,100 monthly payments to the minors as transfers between accounts (because the structured settlements were already valued as guardianship assets) rather than receipts. The court approved the second accounting and awarded attorney's fees from the guardianship estate. Approximately two years later, Sonja's counsel filed a motion to withdraw. The court granted the motion and ordered Sonja to file a third accounting.

Sonja, in propria persona, filed a third accounting of the guardianship estates. The third accounting continued to list the structured settlements as guardianship assets, though Sonja modified the appraisals to add Bailey and Heather's interest in the annuity for which Sonja was the "Measuring Life" (and which paid Bailey and Heather's $1,100 monthly payments) and to remove certain interests in the annuities for which Bailey and Heather were the "Measuring Li[ves]." The third accounting continued to list the $1,100 monthly payments to the minors as transfers.

Sonja's former counsel (Rosemary Perna) filed a petition for immediate payment of attorney's fees from the annuities. Sonja, now represented by attorney Jennifer Betts, objected. The court requested that Sonja, through counsel, file an amended third accounting, deferred decision on Perna's petition for immediate payment, and scheduled a status conference.

6

In advance of the status conference, Sonja, through counsel, filed a petition to dispense with the need for a third accounting and to terminate the guardianship, among other relief. Sonja claimed that the structured settlements were not owned by the minors or part of the guardianship estate and thus should not have been considered guardianship assets. After the structured settlements were removed, in Sonja's view, the assets of the guardianships would be exhausted. Sonja therefore requested that the guardianships be terminated. With the petition, Sonja submitted corrected inventories and appraisals for Bailey and Heather's guardianship estates. The appraisals, which were signed by a probate examiner, listed the value of Bailey and Heather's structured settlements as "$N/A." The appraisals stated that the settlements were "mistakenly included as an asset of the guardianship estate" and the corrected appraisal "deletes the above-described item . . . as an asset of the guardianship estate." (Capitalization omitted.)

At the status conference, the court continued the hearing on the pending petitions and, on its own motion, appointed Parisa Weiss as guardian ad litem for Heather.[2] Sonja's counsel (Jennifer Betts) contacted Weiss and expressed her concern that Weiss had a conflict of interest because Betts previously consulted another attorney at Weiss's law firm (Seltzer Caplan McMahon Viteck) on a personal matter unrelated to the guardianship proceedings. Betts did not retain the attorney or Weiss's firm. Weiss filed an ex parte application notifying the probate court of Betts's concern. In the application,

---

[2]    Weiss was appointed under her former name, Parisa Farokhi. By the time of the status conference, Bailey had attained majority. Her guardianship therefore terminated by operation of law. (See Prob. Code, § 1600, subd. (a).)

7

Weiss argued that the consultation did not create a conflict of interest and requested that the court confirm her appointment as Heather's guardian ad litem. Betts did not appear at the hearing on Weiss's ex parte application, and the court confirmed Weiss's appointment.

Weiss submitted a report to the court as guardian ad litem for Heather. Weiss recommended that Sonja's petition be denied. Weiss's report recounted the underlying litigation and settlement that led to the guardianship proceedings. Weiss's report stated she had corresponded with Sonja, her counsel, and Heather's guardian ad litem in the underlying litigation. Weiss also met with Heather, who said she supported the relief sought by Sonja in her petition. Weiss concluded that a portion of the structured settlement should be included as an asset of Heather's guardianship estate. Weiss also concluded that no grounds existed to terminate the guardianship. Weiss believed the information provided by Sonja was "unclear and incomplete" and "[i]t is in HEATHER's best interest for the Court to deny the relief requested by [Sonja]." Weiss requested an award of $8,975 in attorney's fees from the guardianship estate for her work.

Sonja, through counsel, objected to Weiss's report on various grounds, including that Weiss misconstrued Sonja's inventory and appraisal of the guardianship assets. Sonja also objected to Weiss's request for attorney's fees. Sonja disputed the substance of Weiss's report, asserted that Weiss had a conflict of interest, and alleged that Weiss's work had not benefitted Heather.

The probate court denied Sonja's petition. The court found that the order approving Heather's settlement in the underlying litigation expressly required a guardianship: "While it is technically accurate to say that the court did not *order* Mrs.

8

Blevins to petition for appointment of a guardian, both orders expressly provide that the payments to each of the minors during their minority be made payable to 'Sonja K. Blevins as Guardian of the Estate of" each minor."  The court agreed the structured settlement annuities were not owned by the guardianship estate but found that fact irrelevant:  "[I]t is the *periodic payments* that are the subject of the guardianship estate, not the annuities themselves."  The court ordered Sonja to file an accounting of the periodic payments to the guardianship estates.  The court also granted Weiss's fee request in a reduced amount ($7,180) and discharged her as Heather's guardian ad litem.  Sonja appeals.

## DISCUSSION

### I

Weiss, identifying herself as guardian ad litem for Heather, moved to dismiss Sonja's appeal.  Weiss argued that Sonja's notice of appeal was untimely based on the probate court clerk's service of the appealed order under the California Rules of Court, rule 8.104(a)(1)(A)[3] and based on Perna's service of the court's order under rule 8.104(a)(1)(B).  Weiss also argued that Sonja's notice of appeal was invalid because it was filed in propria persona.  (See *J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 968.)  Sonja opposed the motion.  This court denied Weiss's motion in part to the extent it claimed Sonja's notice of appeal was untimely under rule 8.104(a)(1)(A).  This court also directed Sonja to retain counsel, which Sonja did.  This court, however, deferred Weiss's

---

[3]      Further rule references are to the California Rules of Court.

motion to this panel to the extent it claimed untimeliness based on rule 8.104(a)(1)(B). We therefore consider Weiss's contention here.

Weiss alleges that Perna served notice of entry of the appealed order on December 2, 2014. Sonja did not file her notice of appeal until February 18, 2015. Assuming Perna's service was effective, Sonja's notice of appeal would be untimely under rule 8.104(a)(1)(B). Sonja contends, however, that Perna did not comply with the rule because she did not serve a proof of service with her notice of entry of the order. (See rule 8.104(a)(1)(B) [requiring service of "a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, accompanied by proof of service"].)

We agree with Sonja that the record does not show Perna served her notice of entry of the order "accompanied by proof of service" as required by the rule. The notice of entry of order filed in the trial court does not include proof of service. Instead, Perna filed a declaration of service as a separate document. The declaration of service identifies only the notice of entry of the order as the served document, and not any declaration or proof of service. The declaration of service also does not indicate it was attached to the notice of entry of the order (e.g., by using the phrase "foregoing document" to describe the notice of entry) or was otherwise served with the notice of entry of the order.

Although we invited the parties to provide further briefing on Weiss's motion to dismiss in their merits briefing, and Weiss (representing Seltzer Caplan McMahon Vitek) did so, Weiss does not respond to Sonja's argument on this point. Weiss states, "Ms. Perna served Appellant with a Notice of Entry on December 2, 2014," but she does not

10

mention proof of service.  Heather's brief, which supports Weiss's position on this issue, also does not address this argument.

Without evidence in the record that Perna's notice of entry of the order was "accompanied by proof of service," as required by the rule, Perna's notice was not effective to trigger the 60-day time period to appeal.  (See *Thiara v. Pacific Coast Khalsa Diwan Society* (2010) 182 Cal.App.4th 51, 57.)  Sonja therefore had 180 days after entry of the order in which to appeal.  (See rule 8.104(a)(1)(C).)  Sonja's notice of appeal was filed within that period.  Weiss's motion to dismiss this appeal as untimely (and for related sanctions) is therefore denied.[4]  Given this conclusion, we need not consider the alternative arguments Sonja raises in her opposition to the motion.

---

[4]  Similarly, we deny Seltzer Caplan McMahon Vitek's request in its respondent's brief for attorney's fees in this appeal under Code of Civil Procedure section 907.  The firm's request is procedurally improper because it did not file a separate motion for sanctions.  (See rule 8.276; *Kajima Engineering & Construction, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1402 (*Kajima*).)  Moreover, the request is based on the alleged untimeliness of Sonja's appeal.  Because we conclude Sonja's appeal is timely, it is not frivolous for that reason.

We also deny Sonja's request to strike Seltzer Caplan McMahon Vitek's brief on the grounds that the firm is not properly a party to this appeal.  Seltzer Caplan McMahon Vitek is Weiss's firm, and Weiss is the lead attorney for the firm in this appeal.  Weiss and her firm benefit from the award of fees to Weiss as Heather's guardian ad litem. Because Sonja challenges that fee award in this appeal, Weiss and her firm are properly parties to this appeal as respondents.  (See, e.g., *Estate of Wong* (2012) 207 Cal.App.4th 366, 370.)  To the extent any procedural irregularity results from naming the firm, rather than Weiss, as the respondent party in the firm's brief, Sonja has shown no prejudice and we may disregard any such irregularity.  (See rule 8.204(e)(2)(C).)  Sonja likewise has shown no grounds for her own request for attorney's fees on appeal in her reply brief, and we deny it on both procedural and substantive grounds.  (See Code Civ. Proc., § 907; *Kajima, supra*, 103 Cal.App.4th at p. 1402.)

11

II

In her appeal, Sonja contends the probate court erred by denying her petition to terminate the guardianship, dispense with an accounting, and for other relief. Our standard of review depends on the parties' contentions on appeal. "The resolution of a legal dispute involves three steps: (1) establishing the facts; (2) determining the applicable law; and (3) applying the law to the facts. [Citation.] 'The first step, determining the relevant facts, is committed to the trier of the facts and is reviewed on appeal with deference to the factfinder's decision by applying the venerable substantial evidence test. [Citations.] We view the evidence in a light most favorable to the trial court's decision, resolving all conflicts in the evidence and drawing all reasonable inferences in support of that court's findings. [Citation.] In short, we review the evidence but do not weigh it; we defer to the trial court's findings to the extent they are supported by substantial evidence.' " (*Guardianship of Vaughn* (2012) 207 Cal.App.4th 1055, 1067.) "With respect to the second step in the resolution process, determining the applicable law, we independently review all issues of law raised by the parties." (*Ibid.*) The third step, application of the law to the facts, is reviewed under the circumstances here for abuse of discretion. (See *Guardianship of K.S.* (2009) 177 Cal.App.4th 1525, 1530.) "An abuse of discretion is only demonstrated when no reasonable judge could have made the challenged order." (*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 374.) "The party challenging the order has the burden to show that the court abused its discretion or that the order was not supported by substantial evidence." (*Guardianship of K.S., supra*, 177 Cal.App.4th at p. 1530.)

12

Sonja first contends the probate court erroneously relied on the doctrine of res judicata to credit the orders approving the minors' settlements and to reject her argument that guardianships were not intended to be part of the settlement of the underlying litigation. Sonja has not shown, however, that the court relied on that doctrine. Our review of the record likewise reveals nothing indicating the court did so (or indeed logically could do so). The court referenced the orders approving the settlements as evidence of the legal framework through which Bailey and Heather were to receive their settlements. Neither Sonja nor Bailey or Heather was seeking to relitigate the underlying controversy between them and the City. Res judicata simply does not apply. Moreover, as we will discuss, the court's finding that the minors' guardianships were intended to be part of the settlement is amply supported by the evidence, including the settlement agreement, the orders, and numerous court filings.

Sonja next contends the court misconstrued her corrected inventories and appraisals, which valued Bailey and Heather's structured settlements as "$N/A." Sonja claims the court misinterpreted "$N/A" as "$0," but she does not persuasively explain why the court was bound by the appraisal or why this alleged misinterpretation led to an erroneous decision or abuse of discretion. The court's order shows that it accepted Sonja's view that Bailey and Heather (or their guardianship estates) did not own the structured settlements as embodied by the annuities. The court found, however, that this fact was irrelevant. Bailey and Heather were entitled to periodic payments under their settlement agreement. Those payments are assets the guardianship was intended to protect.

13

Sonja claims the court's interpretation of these payments was erroneous. We review the court's finding for substantial evidence.[5] (See *Guardianship of Vaughn, supra*, 207 Cal.App.4th at p. 1067.) The record here shows that the settlement agreement (signed by Sonja, her counsel, and the minors' guardian ad litem in the underlying litigation), the petitions to approve the settlement, and the approval orders all contemplated monthly payments to the minors during their minority as settlement of the minors' claims against the City. For example, the petitions specifically described the monthly payments as part of the settlement of Bailey and Heather's claims, payable for the benefit of Bailey and Heather. The record shows that Sonja had no interest in these payments, apart from her status as the guardian of Bailey and Heather's estates who would have custody of the payments during their minority. (The settlement agreement, petitions, and orders identified "Sonja Blevins as Guardian of the Estate[s]" of Bailey and Heather as the recipient of the minors' periodic payments.) As an individual, Sonja received her own periodic payments, identified separately in the settlement agreement.

---

5       Citing Code of Civil Procedure section 909, Sonja contends we may review this determination de novo. Sonja is mistaken. "[T]he statute did not affect the respective provinces of the trial and reviewing courts, nor change the established rule against appellate weighing of evidence." (*Monsan Homes, Inc. v. Pogrebneak* (1989) 210 Cal.App.3d 826, 830.) "Although this statute permits an appellate court to receive new evidence, the 'circumstances under which an appellate court can receive new evidence after judgment, or order the trial court to do so, are very rare. For this court to take new evidence pursuant to statute (Code Civ. Proc., § 909) . . . , the evidence normally must enable the Court of Appeal to affirm the judgment [or in this case, *order*], not lead to a reversal. [Citations.] The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings.' " (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1227, fn. 4.) Sonja also contends the standard of abuse of discretion may apply. Our conclusion would be unchanged under the abuse of discretion standard.

This evidence amply supports the probate court's finding that the periodic payments were intended to be made to the minors during their minority under protection of a guardianship.

Sonja focuses on allegedly contrary evidence, including the mediation agreement that left the structure of the settlement up to plaintiffs, pre-settlement quotations for annuities from MetLife Insurance (which do not mention guardianships), and monthly annuity checks (which are payable to Sonja without mention of a guardianship). Sonja also points to alleged incompetence and malpractice committed by her attorney in the underlying litigation and by her prior attorneys in the guardianship proceedings. Sonja claims these attorneys improperly structured the settlement to include a guardianship requirement or erroneously advised Sonja that guardianships were necessary after the settlement had been approved.

Even assuming this evidence supports Sonja's interpretation of the periodic payments, our standard of review precludes us from reweighing this evidence on appeal. The probate court was entitled to disregard Sonja's allegations and credit the documents surrounding the settlement, its approval, and the inception of guardianship proceedings in deciding whether guardianships were intended. As the probate court explained in its order denying Sonja's petition, "Finally, Mrs. Blevins argues that the periodic payments were not intended to be paid to a guardianship estate. Certainly it was the intention of the petitioner's civil attorney, as set forth in the petition seeking approval of the Civil Orders; it was the intention of Judge Vargas, who expressly required that payments be made to a guardianship estate; and it was the intention of Rose Laski, who was the Guardian Ad

15

Litem for the children in the civil action, and who requested in her petition that the payments be made to the guardian of the children's estate. [¶] Perhaps Mrs. Blevins intended or wished something different. No doubt she would have preferred to have had unfettered control of the children's money. However, Mrs. Blevins may have forgotten that the children were themselves parties to the civil action; that they asserted their own claims, separate from hers; and that the settlement provided payments that belonged to them, not to Mrs. Blevins. " The evidence Sonja cites does not make the probate court's finding on this issue unreasonable. Sonja has not shown the court erred by denying her petition.

### III

Sonja also contends the court erred by not modifying its prior awards of attorney's fees to Sonja's attorneys and by awarding attorney's fees to Weiss as Heather's guardian ad litem. As Sonja suggests, we review the court's order for abuse of discretion.[6] (See *Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 234; *Estate of Vokal* (1953) 121 Cal.App.2d 252, 260-261.) We presume the probate court's order to be correct; Sonja must affirmatively demonstrate error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; see *Guardianship of K.S., supra*, 177 Cal.App.4th at p. 1530.)

Sonja contends her prior attorneys made errors in their inventories, appraisals, and accountings submitted to the court in connection with the guardianship. Sonja has not shown, however, how these alleged errors preclude any award of attorney's fees. In light

---

[6] We reject Sonja's alternative suggestion that de novo review is appropriate based on Code of Civil Procedure section 909. (See fn. 5, *ante*.)

16

of the probate court's conclusion regarding the necessity of the guardianships and its characterization of the periodic payments, the probate court was entitled to find that Sonja's prior attorneys' alleged errors were not so serious as to preclude awards of attorney's fees. Sonja has not shown the probate court abused its discretion in this regard.

Sonja also contends the awards to her prior attorneys were excessive in light of the size of the guardianship estates. While the size of a guardianship estate is a relevant consideration in determining the reasonableness of attorney's fee requests, it is not determinative. (See *Conservatorship of Levitt* (2001) 93 Cal.App.4th 544, 549-550; *Estate of Meritt* (1950) 98 Cal.App.2d 70, 76.) Sonja retained these attorneys and requested their work. The volume of their work reflected, in large part, Sonja's desire to use the guardianship funds to support Bailey and Heather during their minority and the concomitant need to account for such use. While Sonja may now disagree with the manner in which they represented her, that disagreement does not compel the probate court to modify its prior awards. Sonja has not shown the court abused its discretion in awarding attorney's fees for the work Sonja's prior attorneys performed in connection with the guardianships or in refusing to modify those awards. (See *Estate of Meritt, supra*, 98 Cal.App.2d at pp. 77-78.)

Sonja attacks the probate court's award of attorney's fees to Weiss, as guardian ad litem for Heather, on numerous grounds. Many of her attacks rely on unsupported speculation that Weiss ignored various conflicts of interest, that Weiss was protecting the interests of Sonja's prior attorneys rather than Heather, and that Weiss working in concert with those prior attorneys and the public guardian. Such speculation is insufficient to

17

show abuse of discretion, and we find Sonja's arguments unpersuasive. Sonja also contends the probate court should have recused itself for bias or made specific factual findings Sonja requested. Sonja provides no relevant authority or reasoned argument in support of either contention. These contentions are therefore waived on appeal. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Even considering these contentions on their own terms, we find them unpersuasive. Sonja further contends Weiss's appointment amounted to an improper advisory opinion, but the probate court's authority to appoint a guardian ad litem is well-settled. (See Prob. Code, § 1003.) As part of her appointment, a guardian ad litem may participate in the proceedings and make her views known, as Weiss did here.

Sonja also claims the court's award of $7,180 in attorney's fees to Weiss was excessive given the size of the guardianship estate. Here, the guardianship estate, as interpreted by the probate court, consisted of monthly payments of $1,100 for Heather's benefit. As we have noted, the size of a guardianship estate is a relevant consideration in determining the reasonableness of attorney's fee requests. (See *Conservatorship of Levitt, supra*, 93 Cal.App.4th at p. 549.) The probate court expressly considered the relationship between Weiss's fee request and the size of the guardianship estate, and it did not award the full amount Weiss requested because of "the small size of the guardianship estate." Moreover, Weiss's services were substantial: she conducted extensive factual investigation, reviewed the guardianship proceedings and Sonja's petition, drafted and submitted a detailed report, and submitted detailed time records regarding her work as guardian ad litem. The subject of Weiss's work, Sonja's petition, raised significant issues

18

including the propriety of the guardianship itself.  In light of this evidence, the probate court's award of attorney's fees was reasonable.  It was not an abuse of discretion.  (See *Estate of Turino* (1970) 8 Cal.App.3d 642, 649-650; see also *Estate of Meritt, supra*, 98 Cal.App.2d at pp. 77-78.)  Sonja's contrary arguments are unpersuasive.[7]

---

[7]    In her reply brief, Sonja repeats verbatim the opposition she filed in the probate court to Weiss's fee request.  This recitation, spanning 14 single-spaced pages, ignores the legal standards on appeal as well as the proper format of appellate briefing.  It does little to advance Sonja's arguments in this court.

DISPOSITION

Parisa Weiss's motion to dismiss is denied.  The order is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.